CRAIN, J.
| ^Michael Petitto, an elected Tangipahoa Parish Councilman, was indicted on December 7, 2007 with two counts of malfeasance in office, violations of Louisiana Revised Statute 14:134. He pled not guilty and waived his right to a jury trial. After a judge trial, he was found guilty and sentenced to five years at hard labor on both counts. The prison sentences were ordered to run consecutively but were suspended. For the suspended sentences, he received concurrent five year probations and was fined $5,000.00. The defendant appeals alleging four assignments of error. For the following reasons, we affirm the convictions and sentences.
FACTS
The events leading to the defendant’s indictment occurred during the period beginning on or about March 1, 2006, and continuing through November 30, 2006. The charges resulted from the defendant’s alleged violation of the Code of Governmental Ethics, specifically Louisiana Revised Statutes 42:1112B(1) and 42:1111E(1). Whether the Code of Governmental Ethics can form the basis for a criminal charge of malfeasance in office under Louisiana Revised Statute 14:134 was answered in the affirmative by the Louisiana Supreme Court in the related matter State v. Petitto, 10-0581 (La.3/15/11), 59 So.3d 1245.
The critical events of this case centered around the sale on October 31, 2006 of eighteen acres of land near Amite, Louisiana, by Sal Petitto, the brother of the defendant, to Pine Grove Subdivision, a subsidiary of Standard Enterprises, Inc. The land was sold for an affordable housing development referred to hereinafter as “Pine Grove Subdivision.” Financing for the development was dependent upon low income housing tax credits obtained through the Louisiana Housing Finance Agency (“LHFA”).
| ^Standard Enterprises was owned by Mark and David Turrentine. Its vice president was James Freeman. In late February or early March of 2006, Sal Pet-itto contacted the Turrentines about locating an LHFA project in the Amite area. Sal, Freeman and the Turrentines were residents of Monroe, Louisiana. That initial contact led to a trip to Amite by Freeman and the Turrentines and a scheduled meeting with the defendant at Spi-tale’s Bar. The defendant showed Freeman and the Turrentines around Amite and provided them with information for determining whether Amite was an appropriate area for an LHFA development.
After the initial meeting with the defendant, Sal contacted Standard Enterprises *766 and advised them he had acquired an exclusive option to purchase eighteen acres of land near Amite. The land was owned by a group of investors who co-owned the property through several entities (collectively, the “Investor Group”). The option was dated March 12, 2006, and set a purchase price for the land of $21,000.00 per acre. The defendant signed the option as a witness.
On March 13, 2006, the defendant proposed a resolution to the Tangipahoa Parish Council in support of Pine Grove Subdivision. The resolution was important for Standard Enterprises to receive tax credits for the development from the LHFA. The tax credits were viewed by Standard Enterprises as critical for their financing. The defendant voted in favor of the support resolution, which passed unanimously.
On March 17, 2006, Sal granted to Standard Enterprises an exclusive option to purchase the same land on which Sal held an option. The price for the land under the option granted to Standard Enterprises was $32,000.00 per acre.
On October 30, 2006, Sal purchased the land from the Investor Group for $377,160.00, as contemplated by the March 12, 2006 option On the next day, Sal sold the property to a subsidiary of Standard Enterprises for $574,720.00, as | contemplated by the March 17, 2006 option. The gain of approximately $197,000.00 was deposited into an account belonging to Sal.
Less than two weeks later on November 11, 2006, Sal paid the outstanding balance on the defendant’s home mortgage loan in the amount of $49,207.12 and obtained cancellation of the mortgage.
The defendant signed a promissory note in favor of Sal in the amount of the home mortgage loan payment. Sal testified that the defendant made payments on that note, but no documentation of such payments was produced, and he could not remember when the last payment was made.
ASSIGNMENTS OF ERROR #1 AND # 2
In his first and second assignments of error, the defendant argues that the State failed to prove beyond a reasonable doubt that he committed either charged offense of malfeasance in office. Regarding count one, he contends that there was insufficient evidence to prove either that he had actual knowledge of his brother’s substantial economic interest in the land to be used for Pine Grove Subdivision or that he had the requisite specific criminal intent. Regarding count two, he contends that there was insufficient evidence to prove that he received any thing of economic value for assisting with passing the support resolution for Pine Grove Subdivision.
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. Amend. XIV; La. Const, art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; La. Code.Crim. Proc. art. 821B; State v. Ordodi, 06-0207 (La.11/29/06), 946 So.2d 654, 660. The Jackson standard of review, incorporated in Article 821, is an objective standard [ 5for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, Louisiana Revised Statute 15:438 provides that the fact finder must be satisfied that the overall evidence excludes every reasonable hypothesis of in *767 nocence. See State v. Patorno, 01-2585 (La.App. 1 Cir. 6/21/02); 822 So.2d 141, 144,
Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent need not be proven as a fact but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126, 1127 (La.1982). Specific intent can be formed in an instant. State v. Cousan, 94-2503 (La.11/25/96), 684 So.2d 382, 390. The existence of specific intent is an ultimate legal conclusion to be resolved by the trier of fact. State v. McCue, 484 So.2d 889, 892 (La.App. 1 Cir.1986).
The defendant was charged in both counts of the indictment with violating Louisiana Revised Statute 14:134, which provides, in relevant part, that:
A. Malfeasance in office is committed when any public officer or public employee shall ...
(2) Intentionally perform [any duty lawfully required of him] in an unlawful manner.
To prove a violation of Section 134, the State must prove an affirmative duty delineated by statute or law upon the defendant as a public officer and that the defendant intentionally performed that duty in an unlawful manner. State v. Davis, 93-0599 (La.4/11/94), 634 So.2d 1168, 1170. The duty must be expressly imposed by law upon the official because the official is entitled to know exactly what conduct is expected of him in his official capacity and what conduct will subject him to criminal charges. State v. Perez, 464 So.2d 737, 741 (La.1985).

|fiCount One: Voting with Actual Knowledge of Brother’s Economic Interest

In count one, the duty allegedly violated by the defendant is set forth in Louisiana Revised Statute 42:1112B(1) which states:
B. No public servant, except as provided in R.S. 42:1120, shall participate in a transaction involving the governmental entity in which, to his actual knowledge, any of the following persons has a substantial economic interest.
(1) Any member of his immediate family.
A “public servant” is defined as a public employee or an elected official. La. R.S. 42:1102(19). A “transaction involving a governmental entity” is defined, in pertinent part, as “any proceeding, application, submission ... or other such particular matter which the public servant ... of the governmental entity in question knows or should know ... [i]s, or will be, the subject of action by the governmental entity.” La. R.S. 42:1102(23). “Substantial economic interest” means an “economic interest which is of greater benefit to the public servant or other person than to a general class or group of persons,” subject to various exceptions not applicable to the present case. La. R.S. 42:1102(21).
The State’s theory was that the defendant introduced and voted on the council resolution supporting an application for tax credits for Pine Grove Subdivision with actual knowledge that his brother intended to sell the land for the development to the developer, and thereby participated in a transaction involving the governmental entity with actual knowledge that his family member (Sal Petitto) had a substantial economic interest in the transaction.
The evidence presented by the State included testimony from numerous wit *768 nesses, including Freeman and Mark Tur-rentine. Freeman testified that in late February or early March 2006, he and the Turrentines went to Amite to determine if the area was suitable for an LHFA development. They met the defendant at Spi-tale’s Bar to discuss locating a development in his district. According to |7Freeman, the company’s practice was to meet with local representatives in the area of a proposed project to discuss the potential development.
After the initial trip, David Turrentine told Freeman to contact Sal Petitto, who Freeman knew, about finding a suitable tract of land for the development. On March 9, 2006, Freeman made a second trip to Amite and was escorted by the defendant to a site that Sal had identified for potential development.
On March 12, 2006, Sal acquired an exclusive option to purchase eighteen acres from the Investor Group, the same tract of land the defendant showed to Freeman on March 9, 2006. The purchase price for Sal was $21,000.00 per acre. The defendant signed this option contract as a witness.
On March 13, 2006, the defendant introduced a resolution before the Tangipahoa Parish Council supporting the LHFA application for tax credits for Pine Grove Subdivision. Under the 2006 rules for LHFA competitive funding, a resolution of support from the local jurisdiction gave “points” towards the approval of an application for tax credits. Mark Turrentine testified that tax credits were the primary funding source for Standard Enterprises’ developments and accounted for approximately ninety percent of their financing. Their practice was to apply for the tax credits prior to buying the land for development.
A unanimous Tangipahoa Parish Council, including the defendant, voted for the resolution. The defendant did not inform any council members before the resolution was passed that his brother held an exclusive option to purchase the land to be developed as Pine Grove Subdivision.
On March 17, 2006, Sal granted Standard Enterprises an exclusive option to purchase the same land that was subject to Sal’s earlier option to purchase, The purchase price for Standard Enterprises was $32,000.00 an acre. On October 30, 2006, Sal exercised his option and purchased the land for $377,160.00. The next day, Sal sold the land to a subsidiary of Standard Enterprises for $574,200.00.
|sThe defendant argues that the State failed to prove that he had actual knowledge of Sal’s interest in the subject land. The trial court found that the defendant had the “actual knowledge” required by Section 1112B(1). This finding is supported by the evidence. The land was generally described in the council resolution introduced by the defendant. The defendant’s signature on his brother’s option to purchase that land is direct evidence of his knowledge of his brother’s economic interest in the land. The timing of the various meetings and transactions, and the contacts between Standard Enterprises, the defendant and the defendant’s brother, all give rise to a reasonable inference that the defendant was aware of his brother’s substantial economic interest in the land that would be developed if LHFA tax credits were obtained, all of which was influenced by the passage of the council’s support resolution.
The trial court also found that approval of the tax credits was essential to the development and, therefore, essential to Sal’s economic interest in the land that he sold to the developers. The defendant introduced and voted for the resolution supporting the LHFA application for tax credits. The trial court summarized the *769 evidence and its significance succinctly and accurately by stating, “[T]he resolution meant points; points meant loan approval, loan approval meant the deal ... [went] through; and if the deal went through, brother got paid....” Viewing the evidence in the light most favorable to the prosecution, we cannot say that the trial court’s determination was irrational.
The trial court rejected the defendant’s assertion that he was unaware of his brother’s interest in the land and the land’s connection to Pine Grove Subdivision. When a case involves circumstantial evidence and the fact finder reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La.App. 1 Cir.), writ denied, 514 So.2d 126 (La.1987). An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the fact finder. See, State v. Calloway, 07-2306 (La.1/21/09), 1 So.3d 417, 418 (per curiam). The trial court concluded that defendant knew about the deal “from day one.” We find that conclusion was rational based upon the evidence.
The defendant was prohibited by Section 1112B(1) from engaging in a transaction involving his governmental entity and an immediate family member who held a substantial economic interest in that transaction. The trial court concluded that the defendant intentionally and unlawfully violated that duty by introducing and voting for the resolution supporting tax credits because that action affected land in which his brother held a substantial economic interest. We cannot say the trial court erred in making that determination.
Assignment of error number one is without merit.

Count Two: Payment of Mortgage Loan

In count two, the duty allegedly violated by the defendant is set forth in Louisiana Revised Statute 42:1111E(1) which states:
No public servant, and no legal entity of which such public servant is an officer, director, trustee, partner, or employee, or in which such public servant has a substantial economic interest, shall receive or agree to receive any thing of economic value for assisting a person in a transaction, or in an appearance in connection with a transaction, with the agency of such public servant.
The State’s theory relative to count two was that, in exchange for the defendant’s assistance in proposing and passing the resolution supporting the LHFA application for tax credits, the defendant’s brother paid the balance of the defendant’s home mortgage loan. The defendant argues that the evidence was [ ^insufficient to support his conviction because the payment by the defendant’s brother was a loan and not part of a quid pro quo agreement.
The State introduced evidence that Sal wrote a check in the amount of $49,207.12 on November 11, 2006 to pay the balance of the defendant’s home mortgage loan. Sal testified that this payment was itself a loan evidenced by a promissory note executed by the defendant on the same day. He testified that the defendant made payments on the note, but he could not remember the date of the last payment. Sylvia Shon, a former reporter with the Hammond Daily Star, testified that she asked the defendant about the source of the money used to pay his mortgage, and *770 he responded that it came from “his business ... and ‘different people.’ ”
The trial court stated: “I think this business about the promissory note is pretty much insulting to my intelligence.” The trial court rejected Sal Petitto’s stated reasons for paying the defendant’s home mortgage loan. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. State v. Young, 99-1264 (La.App. 1 Cir. 3/31/00), 764 So.2d 998, 1006. Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. Young, 764 So.2d at 1006.
The defendant was prohibited by Section 1111E(1) from receiving anything of economic value for assisting a person in a transaction with his public agency. The trial court found that the defendant intentionally and unlawfully violated that duty by introducing and voting to pass the council resolution in support of the application for tax credits, all in exchange for his brother paying off his home mortgage loan. Viewing the evidence in the light most favorable to the prosecution, we cannot say that the trial court’s determination was irrational.
Assignment of error number two is without merit.
1„ASSIGNMENT OF ERROR # 3
In his third assignment of error, the defendant argues relative to count two that the trial court improperly shifted the burden of proof to the defendant by finding that evidence of the “sworn written statement” required by Section 1111E was an affirmative defense.
The indictment charged the defendant with violating Section 1111E(1). The “sworn written statement” provision is in paragraph (a) of Section 1111E(2), which imposes a reporting requirement on an “elected official.” The defendant was not charged with violating Section 1111E(2), and nothing in the language of that section suggests that filing a sworn statement insulates the filer from discipline for a violation of Section 1111E(1).
The Supreme Court has recognized that “[e]thical impropriety may coexist with criminal conduct, and the existence of the former does not pre-empt the imposition of criminal sanctions for violation of a distinct penal statute.” Petitto, 59 So.3d at 1253. Section 1111E empowers the Board of Ethics to determine and sanction the conduct prohibited thereunder. Such conduct can include reporting violations delineated under Section 1111E(2). But the statute also defines a “duty lawfully required” under the malfeasance statute. Petitto, 59 So.3d at 1249. Such a duty is found in Section llllE(l), and does not incorporate a reporting requirement. By charging the defendant under Section 1111E(1), the “duty lawfully required” of the defendant was confined to that specific provision. Otherwise, an elected official such as the defendant, charged with criminally violating Section llllE(l), could absolve himself by filing a “sworn written statement,” while a public employee charged under the same section could not. Such an interpretation would lead to absurd consequences.
Accordingly, we find that the failure to file the notice required by Louisiana Revised Statute 42:1111E(2) is not an element of a prosecution for malfeasance in | ^office predicated on Louisiana Revised Statute 42:1111E(1), nor is the filing of the notice an affirmative defense to any such prosecution.
This assignment of error lacks merit.
*771 ASSIGNMENT OF ERROR # 4
In his final assignment of error, the defendant asserts that the trial court erred in denying his motion to quash filed on June 20, 2011. The motion advanced five separate arguments, specifically: (i) the indictment was duplicitous under Louisiana Code of Criminal Procedure article 532(3); (ii) the trial court lacked jurisdiction under Louisiana Code of Criminal Procedure article 532(8) because jurisdiction lies with the ethics board; (iii) the indictment was premature because the ethics board had not adjudicated the matter; (iv) the district attorney gave the grand jury an erroneous instruction because the grand jury is not empowered to return a charge on an ethics offense; and (v) allowing the district attorney to initiate a criminal prosecution based on an ethical violation violates separation of powers.
The arguments asserted in (ii), (iv) and (v) address whether the district attorney and the trial court had jurisdiction to bring and to preside over a malfeasance in office prosecution based upon ethical violations. The duties imposed on public officials by Louisiana Revised Statutes 42:1112B(1) and 42:1111E(1) may form the basis for a charge of malfeasance in office. See, Petitto, 59 So.3d at 1254, Implicit in the Petitto decision is the power of the district attorney to institute such prosecutions and the trial court to hear them. These arguments are without merit.
The argument asserted in (iii) is that it is improper for the prosecution to proceed before the ethics board adjudicates whether there is an ethics violation. The essence of the argument is that the prosecution is premature. That is not a | ^ground for quashing an indictment. See, La.Code Grim. Pro. art, 532. This argument is without merit.
The argument asserted in (i) is that the indictment was duplicitous. Duplicity is a ground for quashing an indictment. See, La.Code Crim. Proc. Art. 532(3). Duplicity is not now defined in the Code of Criminal Procedure, but former Code of Criminal Procedure article 491 defined it as “the inclusion of two offenses in the same count.” Former Code of Criminal Procedure article 492 stated that “[a] count in an indictment is not duplicitous because, in stating the elements of the offense charged or describing how it was committed, it alleges criminal acts which would separately constitute another offense or other offenses.” Both Articles 491 and 492 were repealed by 1975 La. Acts No. 528, § 1.
Code of Criminal Procedure article 493 now provides:
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
Under this article, a defendant may be charged with multiple offenses in the same indictment if those offenses are based on the same acts or transactions.
The State was required to prove different facts to secure convictions on each count of the indictment. For count one, the State had to prove the defendant knowingly participated in a transaction involving the governmental entity of which he was a member and a member of his immediate family. See. La. R.S. 42:1112B(1). For count two, the State had *772 to prove the defendant received any thing of economic value for assisting a person in a transaction with his agency. See, La. R.S. 42:1111E(1). These statutes were set forth in the defendant’s indictment and details were provided in the State’s answer to the defendant’s 114motion for bill of particulars. The argument that the charges were duplicitous is without merit.
The defendant also argues that the charges in counts one and two constitute a double jeopardy violation. Although he did not raise the issue in the trial court, we consider its merits because Louisiana Code Criminal Procedure article 594 states that double jeopardy can be raised at any time.
Both the federal and state constitutions provide that no person shall twice be put in jeopardy of life or liberty for the same offense. U.S. Const. Amend. V; La. Const, art. I, § 15. The Double Jeopardy Clause protects the accused against multiple punishments for the same offense, as well as a second prosecution for the same offense after acquittal or conviction. State v. Letell, 12-0180 (La.App. 1 Cir. 10/25/12), 103 So.3d 1129, 1136.
The defendant contends that his convictions violate Louisiana’s “same evidence” test.[1] The “same evidence” test considers the actual physical and testimonial evidence necessary to secure a conviction. State v. Williams, 07-0931 (La.2/26/08), 978 So.2d 895, 897. If the proof required to support a finding of guilt of one crime would also support conviction of another crime, the prohibition against double jeopardy bars a conviction for more than one crime. Letell, 103 So.3d at 1136. The test depends on the proof necessary for a conviction, not all of the evidence actually presented at trial. State v. Martin, 11-1843 (La.App. 1 Cir. 5/2/12), 92 So.3d 1027, 1031, writ denied, 12-1244 (La.11/9/12), 100 So.3d 836. Therefore, “if the evidence required to support a finding of guilt of one crime would also support a conviction for another offense, the defendant can be placed in [^jeopardy for only one of the two.” State v. Sandifer, 95-2226 (La.9/5/96), 679 So.2d 1324, 1329 (emphasis in original).
The charges against the defendant were premised upon two separate violations of the Code of Governmental Ethics. Under count one, the state had to prove that the defendant participated in a transaction involving his governmental entity when he had actual knowledge that a member of his immediate family held a substantial economic interest in that transaction. La. R.S. 42:1112B(1). The focus of that prosecution was the defendant’s participation in introducing and approving the support resolution and his knowledge of his brother’s economic interest in that transaction. Under count two, the state had to prove that the defendant received any thing of economic value in exchange for assisting a person in a transaction with his agency. La. R.S. 42:1111E(1). The focus of that prosecution was the payment of defendant’s home mortgage loan by his brother.
A conviction on count one did not require evidence of defendant’s receipt of *773 any thing of economic value. A conviction on count two did not require evidence that defendant had actual knowledge of his brother’s substantial economic interest in the transaction. Because the focus of the evidence for each charge was different, we find that the defendant’s convictions do not violate the prohibition against double jeopardy. This argument is without merit.
For the foregoing reasons, we affirm the defendant’s convictions and sentences.
CONVICTIONS AND SENTENCES AFFIRMED.

. The Louisiana Supreme Court has also recognized the "Blockburger " test established in Blockburger v. U.S., 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which held that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. See, State v. Martin, 11-1843 (La.App. 1 Cir. 5/2/12), 92 So.3d 1027,1030, writ denied, 12-1244 (La.11/9/12), 100 So.3d 836. In contrast, the "same evidence” test is somewhat broader. State v. Cotton, 00-0850 (La. 1/29/01), 778 So.2d 569, 573.