CRAIN, J.
12The defendant, George Adonis Carter, was charged by bill of information with armed robbery by use. of a firearm, a violation of Louisiana Revised Statutes 14:64 and 14:64.3, and with being a convicted felon in possession of a firearm or carrying a concealed weapon, a violation of Louisiana Revised Statute 14:95.1. After pleading not guilty, the defendant filed a motion to suppress the pretrial identification and any subsequent in-court identification, which was denied. After a trial by jury, the defendant was found guilty as charged on both counts.[1] Motions for new trial, postverdict judgment of acquittal, and in arrest of judgment were denied. The defendant was sentenced to imprisonment at hard labor for ninety-nine years for the armed robbery conviction, plus an additional five years pursuant to Louisiana Revised Statute 14:64.3, and twenty years at hard labor for the felon in possession of a firearm conviction. All of the sentences were ordered to be served consecutively. The defendant now appeals, assigning error to the trial court’s denial of the motion to suppress, the sufficiency of the evidence, the constitutionality of the sentences, the denial of the motion in arrest of judgment, and the State’s use of a prior juvenile conviction as a predicate offense. We affirm the convictions, vacate the sentences, and remand for resentencing.
FACTS
A robbery was committed by three perpetrators on July 19, 2011, at Pablo’s Truck Stop, a New Roads convenience store and casino. At about 2:30 a.m., three individuals entered the casino through an entrance that was being monitored and *973 controlled by a security guard, Robert Carter. One of the perpetrators entered the building wearing a bandana over his face, which Carter immediately demanded that he remove. When his instructions were ignored, Carter reached for his gun, | abut one of the perpetrators drew a gun, pointed it at Carter’s head, and ordered him to put his hands on his head. Carter was then forced at gun point onto his knees with his hands behind his back. Two of the perpetrators took Carter’s gun and keys, then bound his hands with duct tape. The perpetrator wearing the bandana used- the keys to open cash drawers located behind a counter, from which the perpetrators removed approximately eight thousand dollars in cash.
COUNSELED AND PRO SE ASSIGNMENT OF ERROR NUMBER ONE
In counseled and pro se assignment of error number one, the defendant argues that the trial court erred in denying his motion to suppress the identification of the defendant by Carter. Carter positively identified the defendant and the codefen-dant, Travis Isaac, as being the two perpetrators without masks.[2] The defendant contends that the photographic lineup unduly focused the attention of Carter on the defendant and increased the likelihood of misidentification, because the same photographs used for the photographic lineup for Isaac were dsed again for the photographic lineup for the defendant, except that the defendant’s photograph was substituted for Isaac’s. In support of his argument that the identification was not reliable, the defendant points out that Carter admitted to being mistaken about the height, weight, and possible age of the perpetrators.
To suppress an identification, the defendant must prove the identification procedure was suggestive and that the totality of circumstances presented a likelihood of misidentification. State v. Sparks, 88-0017 (La.5/11/11), 68 So.3d 435, 477, cert. denied, El-Mumit v. Louisiana, — U.S. -, 132 S.Ct. 1794, 182 L.Ed.2d 621 (2012). An identification procedure is suggestive if it unduly focuses a witness’s attention on the suspect. Sparks, 68 So.3d at 477; State v. Neslo, 433 So.2d 73, 78 (La.1983). However, the suggestive nature of an identification does not per se preclude admissibility unless the identification is untrustworthy under the totality of the circumstances. The central question in determining the admissibility of an identification is whether the actual identification was reliable. Sparks, 68 So.3d at 477.
In determining whether the reliability of an identification outweighs the suggestiveness of the identification procedure, the court is directed to look to several factors: (1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the witness’s prior description of the perpetrator; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Sparks, 68 So.3d at 477.
A trial court’s determination of the admissibility of identification evidence is entitled to great weight and will not be disturbed on appeal in the absence of an abuse of discretion. State v. Kimble, 10-1559 (La.App. 1 Cir. 3/25/11), 62 So.3d 782, 789. When a trial court denies a motion to *974 suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court’s discretion, that is, unless such ruling is not supported by the evidence. See State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 280-81. However, a trial court’s legal findings are subject to a de novo standard of review. See State v. Hunt, 09-1589 (La.12/1/09), 25 So.3d 746, 751.
Detective Shael Stringer of the New Roads Police Department assisted in the investigation and testified at the suppression hearing and at trial.[3] He assisted in the robbery investigation. After arriving at the crime scene, he observed video | ^surveillance and interviewed witnesses, including Carter, who provided a description of the three perpetrators. Carter recognized the two unmasked perpetrators as having previously been to the casino.
Later on the morning of the robbery, an informant advised the police that the defendant and Isaac were two of the assailants. The officers then constructed a six-person photographic lineup consisting of two rows of three photographs with a photograph of Isaac in the middle position on the second row. Detective Stringer presented the photographic lineup to Carter, who positively identified Isaac. The next day Detective Stringer showed Carter a second photographic lineup, which included the photograph of the defendant in the middle position on the first row of photographs. The photograph of Isaac was not in the photographic lineup of the defendant, but the remaining photographs were the same as had been included in the photographic lineup of Isaac, only in a different order. Carter positively identified the defendant as the second unmasked perpetrator.
When questioned about this procedure, Detective Stringer explained, “Because [of] the photo lineup pictures that we ha[d], at the time, we had to use subjects that were in close proximity with physical characteristics; race, skin color, hair, that type— those types of things in order to have all of [them] appear the same so it’s not subjective.” According to Detective Stringer, Carter knew the defendant, presumably from his previous appearance at the casino, and was “very” certain in his identification.
Carter testified at the suppression hearing and at trial. He started working as a security officer at Pablo’s over a year before the robbery and had been in the security business for twenty-four years. Carter recognized the unmasked perpetrators as regular patrons of the casino but could not identify the third perpetrator because he wore a bandana over his face. Carter did not notice if the | fidefendant, who had braided hair at the trial, had had braids or gold teeth at the time of the crime, but testified that “I didn’t identify ’em by hair; I identified ’em by facial features, like I had been trained over the years.” In a statement given to the police on the day of the robbery, Carter stated that one unmasked perpetrator was taller and weighed more than the other one, but he did not make that distinction at the suppression hearing.
Carter did not recognize that the same photographs were used in the photographic lineups for both the defendant and Isaac. He testified that he picked the photograph of the defendant in the lineup because the defendant was one of the *975 perpetrators, not because the photograph of the defendant was the only new photograph in the lineup. Carter testified that “[a]s fast as they put it down, I went straight — straight to ’em,” He explained that he was able to quickly select the photograph of the defendant because of “my training and that’s — I was looking at that gentleman during the robbery.” He testified that the defendant was the one who held him at gunpoint, and that he was “two hundred and fifty thousand percent” certain of his in-court identification of the defendant.
John Benton Conner, a private investigator who conducted hundreds of lineups during his former employment with the East Baton Rouge Parish Sheriffs Office, testified at the suppression hearing. He was retained on behalf of the defendant, and examined the State’s evidence, interviewed Carter,-and was present during Carter’s testimony at the suppression hearing. Conner questioned Carter’s credibility and testified that using the same photographs in both lineups and placing the photographs of the defendant and Isaac in the center position in the lineup was suggestive and an unacceptable practice.
The trial court denied the motion to suppress. The court was persuaded by Carter’s familiarity with both the defendant and Isaac and the level of certainty in |7his identification. The trial court stated, “[T]hat victim identified him [Isaac] and the other person [the defendant]. He knew he had seen him before. You can’t take that away from [him].... That man’s going to testify at the trial that I knew who they were.”
The photographic lineup used to identify the defendant was suggestive. Under usual circumstances, using the exact same five photos in a six person photographic lineup and only substituting the photos of the two known suspects may render the identification by a witness unreliable. However, the totality of the circumstances in this case do not present the usual case. Here, the eyewitness is a security guard who is experienced in making identifications. He knew the unmasked perpetrators as being regular patrons of the casino, so he was familiar with them before the crime and the photographic lineup, In addition, the Sharp factors reinforce the reliability of Carter’s identification. Carter had the opportunity to view the perpetrator in close proximity during the crime and paid particular attention to his facial features, particularly since the defendant held Carter at gunpoint. He identified the defendant within 48 hours of the crime and expressed a high degree of certainty in the accuracy of the identification.
Under the totality of these circumstances, the reliability of the identification of the defendant by Carter outweighed the suggestiveness of the photographic lineup. We find that the trial court did not abuse its discretion in determining that the identification evidence, including the photographic lineup, was sufficiently trustworthy to warrant being admitted into evidence and considered by the jury. This assignment of error is without merit.
COUNSELED ASSIGNMENT OF ERROR NUMBER TWO
In, the second counseled assignment of error, the defendant reasserts that the photographic lineup was overly suggestive and contends that the evidence IsPresented by the state was insufficient to' develop him as a suspect and support the convictions.
A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const, amend. XIV, La. Const, art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, this *976 court must consider “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); see also La.Code Crim. Pro. art. 821B; State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988). The Jackson standard, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. State v. Petitto, 12-1670 (La.App. 1 Cir. 4/26/13), 116 So.3d 761, 766, writ denied, 13-1183 (La.11/22/13), 126 So.3d 477.
When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. State v. Wright, 98-0601 (La.App. 1 Cir. 2/19/99), 730 So.2d 485, 487, writs denied, 99-0802 (La.10/29/99), 748 So.2d 1157, 00-0895 (La.11/17/00), 773 So.2d 732. When analyzing circumstantial evidence, Louisiana Revised Statute 15:438 provides that, in order to convict, the fact finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. Petitto, 116 So.3d at 766; Patorno, 822 So.2d at 144. The facts then established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime, Wright 730 So.2d at 487.
19The defendant never contended that an armed robbery was not committed, only that he did not commit it. When the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. Positive identification by only one witness is sufficient to support a conviction. State v. Neal, 00-0674, (La.6/29/01), 796 So.2d 649, 658. A fact finder’s determination of the weight to be given evidence is not subject to appellate review, and this court will not reweigh the evidence to overturn a fact finder’s determination of guilt. State v. Cobb, 13-1593 (La.App. 1 Cir. 3/27/14), 144 So.3d 17, 24.
In addition to attacking the identification of the defendant by Carter, the defendant asserts that the DNA evidence was skewed and. inconclusive because the DNA expert failed to include a sample from the defendant’s fraternal twin. The defendant further contends that the money believed to have been taken from the robbery should have been tested for DNA evidence because Alvin Isaac, the uncle of Travis Isaac, claimed that the money belonged to him. The defendant also attempts to discount incriminating testimony from Todd Isaac, by claiming that the State threatened to prosecute Todd if he did not testify against the defendant.
Deputy Elliott Thomas, a former patrol supervisor with the New Roads Police Department, was dispatched to the crime scene after the robbery. He interviewed Carter, dusted for fingerprints, and looked for DNA evidence. He seized a roll of duct tape with a rubber glove attached to it and collected swabs from areas that had suspected DNA. Dr. Leslie Soft, an employee at the Louisiana State Police crime lab, qualified as an expert in DNA forensic analysis and testified that DNA from the duct tape matched the DNA profile of the defendant. Statistically, assuming one contributor, the probability of finding the same DNA profile from someone other than the defendant was approximately one in 9.52 |inmillion. Dr. Son testified that while identical twins share the same DNA *977 profile, fraternal twins have different DNA profiles because each obtains a variety of DNA combinations from the mother and father. Dr. Son did not know the highest possible percentage of similarity between fraternal twin DNA profiles.
George Donny Carter confirmed that he and the defendant are fraternal twins and not identical twins. He testified that duct tape was kept at the home where he resided with the defendant. On the night of the robbery, the defendant left home at about 10:00 p.m. and returned at some point between 2:00 a.m. or 3:00 a.m. George could not account for the whereabouts of the defendant during that period of time.
Detective Stringer described his initial investigation at the scene and the viewing of the surveillance video. He described two telephone calls, one from an informant who stated that Travis Isaac should be investigated for the robbery, and one from an anonymous caller who said that the defendant was also involved. Detective Stringer testified that Malcolm Isaac, a relative of Travis Isaac, placed the defendant and Travis together on the night of the crime. The investigating officers compared photographs of Travis with a photograph taken from the surveillance video and concluded that it was the same person. Detective Stringer then conducted the six-person photographic lineups where Carter first identified Travis, then identified the defendant the next day.
Pursuant to a search warrant executed at the last known residence for Travis, the police recovered more than seven thousand dollars from a closet in the house. While Alvin Isaac, who lived at the residence, claimed ownership of the money, Detective Stringer concluded that the money did not belong to him.
Garter testified about the events of the crime, his training as a security officer, and the certainty of his identifications of the defendant and Travis Isaac. luHe acknowledged some discrepancies in his descriptions of the perpetrators’ clothing or stature, but explained, “[I]f I got a gun pointed at me or something, I look at the faces. That’s ... how I was trained, I look at the faces so I can identify it. You can change your appearances, but the faces, you cannot change.”
Todd Isaac, another relative of Travis Isaac, testified that he saw the defendant and Travis together at the Isaac residence on the night of the robbery. Travis subsequently gave Todd the gun that was allegedly involved in the robbery and told him to hide it. Todd hid the gun under the steps at the Isaac residence, then later returned the gun to Travis at his request. Alvin Isaac told Todd that seven thousand dollars was stolen in the robbery. Todd denied any further participation in or knowledge of the robbery and denied being the perpetrator who wore the bandana. Todd stated that Travis was not living at the Isaac residence at the time of the robbery, but he had lived there in the past. The surveillance video was played during Todd’s testimony, and he identified Travis in the video but could not identify the other two perpetrators.
The recorded statement that Todd gave to the police was played for the jury. According to the statement, Todd was present when the defendant and Travis arrived at the defendant’s residence on the morning of the robbery, and apparently after the robbery took place. Both the defendant and Travis rushed into the residence, and Travis told Todd to hide the gun. Todd hid the gun at the Isaac residence, then returned to the residence of the defendant. On cross-examination, Todd testified that he had been threatened with a forty-year sentence. When asked if he lied because he was threatened, Todd stat *978 ed, “I don’t know.” Although he was arrested, Todd only spent approximately three months in jail.
Alvin Isaac testified that Travis had not lived at the Isaac residence for approximately twelve years before the robbery. Alvin claimed that he owned the 112money found at his residence, and. he denied that the defendant or Travis made any statements to him regarding a robbery.
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness, Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Underdonk, 11-1598 (La.App. 1 Cir. 3/23/12), 92 So.3d 369, 376, writ denied, 12-0910 (La.10/8/12), 98 So.3d 848. The determination by the trier of fact of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder’s determination of guilt. Cobb, 144 So.3d at 24.
Having reviewed the evidence in its entirety, we cannot say that the determination of the jury was irrational under the facts and circumstances presented to them. See State v. Ordodi, 06-0207 (La.11/29/06), 946 So.2d 654, 662. A reviewing court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the fact finder. See State v. Calloway, 07-2306 (La.1/21/09), 1 So.3d 417, 418 (per curiam). We find the evidence negates any reasonable probability of misidentification and supports the finding of guilt. Viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of both armed robbery by use of a firearm and being a convicted felon in possession of a firearm. The defendant’s second assignment of error is without merit.
|1:,PRQ SE ASSIGNMENT OF ERROR NUMBER TWO
In his second pro se assignment of error, the defendant argues that the trial court erred and abused its discretion in denying his motion in arrest of judgment, because the trial court failed to advise him of his right to waive a jury trial in accordance with Louisiana Code of Criminal Procedure article 780. The defendant maintains that if he had been advised of that right, he would have waived a trial by jury because of the risk that certain aspects of the case may have inflamed the passions of the jury. The defendant argues that a judge would have been able to put aside such passions and “administer the law from a more experienced point of view.”
Louisiana Code of Criminal Procedure article 859(4) provides, in pertinent part, that the court shall arrest the judgment when “[t]he tribunal that tried the case did not conform with the requirements of Article ... 780 ... of this code.” Prior to its amendment in 2013, Louisiana Code of Criminal Procedure article 780A provided:
A defendant charged with an offense other than one punishable by death may knowingly and intelligently waive a trial by jury and elect to be tried by the judge. At the time of arraignment, the defendant in such cases shall be informed by the court of his right to waive trial by jury, [emphasis added]
However, the emphasized sentence was deleted from Article 780 effective June 17, 2013. See La. Acts. 2013, No. 343, § 1. After June 17, 2013, Article 780 no longer *979 requires that a trial court inform a defendant at his arraignment of his right to waive a jury trial. The prior mandate of the article regarding notification to the defendant of the right to waive a jury trial was statutory in nature and was not.a constitutional right. See State v. Sewell, 342 So.2d 156, 160 (La.1977).
The defendant was initially arraigned prior to the amendment of Article 780. On October 23, 2013, the State amended the bill of information and the defendant 114was re-arraigned on the amended charges after the effective date of the 2013 amendment to Article 780, The amended bill of information was read to the jury, and the defendant was tried on those charges. Article 780, as amended, did not require the trial court to advise the defendant at arraignment of the right to waive a trial by jury. Pro se assignment of error number two is without merit.
PRO SE ASSIGNMENT OF ERROR NUMBER THREE
In pro se assignment of error number three, the defendant argues that the trial court erred in allowing the State to allege a prior juvenile conviction of first degree robbery as a predicate conviction on the face of the amended bill of information, because that offense was not tried before a jury, The defendant claims that the State added that predicate offense solely to circumvent the trial court’s prior ruling that the State could not offer proof of the conviction as “other crimes evidence” under Louisiana Code of Evidence article 404.
Although the defendant filed a motion to quash on other grounds, the argument being raised on appeal was not raised in the trial court. An irregularity cannot be availed of after the verdict unless it was objected to at the time of the occurrence. La.Code Crim. P. art. 841 A. In State v. Pelas, 99-0150 (La.App. 1 Cir. 11/5/99), 745 So.2d 1215, 1217, this court held that the defendant was precluded from raising a new basis for his motion to quash on appeal. See also State v. Dahlem, 13-0577 (La.App. 1 Cir. 6/18/14), 148 So.3d 591, 598-99. Consequently, we will not consider the issue presented in pro se assignment of error number three.
REVIEW FOR ERROR
Pursuant to Louisiana Code of Criminal Procedure article 920, this court routinely conducts a review for error discoverable by mere inspection of the | ^pleadings and proceedings and without inspection of the evidence. Our review of the record reveals a sentencing error.
Louisiana Code of Criminal Procedure article 873 provides that if a motion for new trial is filed, a sentence shall not be imposed until at least twenty-four hours after the motion is overruled. See also State v. Augustine, 555 So.2d 1331, 1333 (La.1990); State v. Coates, 00-1013 (La.App. 1 Cir. 12/22/00), 774 So.2d 1223, 1226. The failure to observe the twenty-four hour delay between the denial of the defendant’s motion for new trial and his sentencing is not harmless error if the sentence is challenged on appeal. See Augustine, 555 So.2d at 1333-35. As a general rule, when a defendant challenges a non-mandatory sentence, and the delay is not waived, the defendant’s sentence must be vacated and the matter remanded for resentencing. State v. Parry, 07-1972 (La.App. 1 Cir. 3/26/08), 985 So.2d 771, 777.
The trial court sentenced the defendant immediately after denying his motion for new trial and motion for postverdict judgment of acquittal, and without the defendant having waived the delay required by Article 873. The defendant challenged his non-mandatory sentences as excessive and timely filed a motion to reconsider sen *980 tence in accordance with Louisiana Code of Criminal Procedure article 881.1. The failure of the trial court to wait twenty-four hours after those motions were denied, or to obtain a waiver of that required delay, constitutes an error on the face of the record. Accordingly, we must vacate the defendant’s sentences and remand the matter for resentencing.[4]
CONVICTIONS AFFIRMED; SENTENCES VACATED; REMANDED FOR RESENTENCING.
McDONALD, J., concurs.

. The codefendant, Travis T. Isaac, was charged with the same two offenses, tried with the defendant, and also found guilty as charged. Isaac has filed a separate appeal in this court. See State v. Isaac, 14-0758 (La.App. 1 Cir. 1/27/15), 2015 WL 410328.

. According to the record, the defendant ultimately turned himself in to the police. United States Marshals assisted in capturing Isaac. The third perpetrator who wore the bandana was not identified.

. In determining whether the ruling on the motion to suppress was correct, we are not limited to the evidence adduced at the hearing on the motion. We may also consider all pertinent evidence given at the trial of the case. State v. Chopin, 372 So.2d 1222, 1223 n. 2 (La.1979).

. In light of this ruling, we pretermit any consideration of the third assignment of error regarding the constitutionality of the sentences imposed.