NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 KA 0115

STATE OF LOUISIANA

VERSUS

JOSHUA CHAISSON

*Judgment Rendered:* SEP 1 5 2023

* * * * * * * *

Appealed from the
17th Judicial District Court
In and for the Parish of Lafourche
State of Louisiana
Case No. 599880, Division B

The Honorable Steven N. Miller, Judge Presiding

* * * * * * * *

Prentice L. White
Baton Rouge, Louisiana

Counsel for Defendant/Appellant
Joshua Chaisson

Kristine Russell
District Attorney
Joseph S. Soignet
Shaun George
Assistant District Attorneys
Thibodaux, Louisiana

Counsel for Appellee
State of Louisiana

* * * * * * * *

BEFORE: THERIOT, PENZATO, AND GREENE, JJ.

**THERIOT, J.**

The defendant, Joshua Chaisson, was charged by bill of information with armed robbery (count two), a violation of La. R.S. 14:64, being a convicted felon in possession of a firearm or carrying a concealed weapon (count three), a violation of La. R.S. 14:95.1, and attempted second degree murder (count four), a violation La. R.S. 14:27 and La. R.S. 14:30.1.[1] He pled not guilty, and, after a trial by jury, was found guilty as charged on all three counts. The trial court denied a motion for new trial and a motion for post-verdict judgment of acquittal filed by the defendant. The trial court sentenced the defendant to ninety-nine years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence on count two, twenty years imprisonment at hard labor on count three, and fifty years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence on count four. The trial court ordered that the sentences on counts two and three be served concurrently, and that the sentence on count four be served consecutively to the sentences on counts two and three. The defendant now appeals, assigning error to the sufficiency of the evidence and the admission of a pretrial photographic lineup identification at trial. For the following reasons, we affirm the convictions and sentences.

## STATEMENT OF FACTS

On August 3, 2020, Deputy Thomas Duhig and Detective Elizabeth Leon of the Lafourche Parish Sheriff's Office (LPSO), responded to complaints, first reported at 8:21 p.m., of gunshots heard in the Raceland/Greentown community. Prior to the shooting, Leroy Allen, the victim, received text messages[2] from Hailey

---

[1] The defendant was also charged on count one with armed robbery with a firearm, a violation of La. R.S. 14:64 and La. R.S. 14:64.3. However, prior to the commencement of trial, the State nol-prossed this charge.

[2] The text messages were of a sexual nature, in which Hailey Curole invited Allen to her residence and told him to come alone.

2

Curole, whom he knew as the mother of his cousin's child, and then drove to Curole's residence. As Allen exited his truck, an individual armed with a gun approached him, put the gun up to Allen's head, and told him to give him everything he had. Allen surrendered his keys, glasses, cell phone, and wallet containing $400.

The gunman ordered Allen to get back into his truck. As the gunman entered the passenger side of the truck, he told Allen to drive to a secluded area known as the "Forties." Allen refused, believing that the gunman wanted to kill him without any witnesses. The gunman then put the gun to Allen's head again and pulled the trigger. The gun made a clicking sound but did not discharge. As the gunman attempted to unjam the gun, Allen jumped out of the moving truck. As he ran into a store parking lot, he heard approximately ten gunshots being fired in his direction.

Deputy Duhig and Detective Leon made contact with Allen and located ten shell casings in and around the store parking lot, where Allen ran when he escaped from the truck. Detective Leon went to Curole's residence and learned that a truck parked in her driveway was registered in the defendant's name. Allen identified the defendant as the gunman in a six-person photographic lineup and again in court during the trial.

The defendant did not testify at trial. Prior to trial, during an interview by Detective Leon, the defendant stated that he had no knowledge of the incident.

## ASSIGNMENT OF ERROR NUMBER ONE

In assignment of error number one, the defendant argues that the evidence presented was insufficient to support the convictions. He argues the victim's identification of him was inadequate and contends that there was no physical

evidence connecting him to the offenses.[3] Thus, he argues his convictions should be reversed.

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV, La. Const. art. I, § 2. The standard of review for sufficiency of the evidence to support a conviction is whether or not, viewing the evidence[4] in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime, and the defendant's identity as the perpetrator of that crime, beyond a reasonable doubt. See **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); **State v. Currie**, 2020-0467 (La. App. 1st Cir. 2/22/21), 321 So.3d 978, 982.

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. **Currie**, 321 So.3d at 982. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. **State v. Dyson**, 2016-

---

[3] The defendant is not arguing that the offenses did not occur, but rather challenges his identity as the perpetrator of the offenses.

[4] The admission of Allen's pretrial identification is at issue in assignment of error number two. We note that the entirety of the evidence, both admissible and inadmissible, must be considered in determining the sufficiency of the evidence. If the entirety of the evidence, both admissible and inadmissible, is insufficient to support the conviction, the accused is entitled to an acquittal and no further inquiry as to trial errors is necessary. See **State v. Hearold**, 603 So.2d 731, 734 (La. 1992). On the other hand, when the entirety of the evidence, admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must consider assignments of trial error to determine whether the accused is entitled to a new trial. **Id**; **State v. Duhon**, 2018-0593 (La. App. 1st Cir. 12/28/18), 270 So.3d 597, 609, writ denied, 2019-0124 (La. 5/28/19), 273 So.3d 315.

4

1571 (La. App. 1st Cir. 6/2/17), 222 So.3d 220, 228, writ denied, 2017-1399 (La. 6/15/18), 257 So.3d 685.

Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64(A). Possession of a firearm or carrying a concealed weapon by a convicted felon is the possession of a firearm by any person who has been convicted of a statutorily enumerated felony.[5] La. R.S. 14:95.1(A). Attempted second degree murder is the specific intent to kill[6] and the commission of an overt act tending toward the accomplishment of that goal. See La. R.S. 14:27 and 14:30.1; **State v. Barnett**, 96-2050 (La. App. 1st Cir. 9/23/97), 700 So.2d 1005, 1009.

Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the fact finder. **Currie**, 321 So.3d at 982-83.

The State bears the burden of proving the elements of the offense, along with the burden of proving the identity of the defendant as the perpetrator. When the key issue is the defendant's identity as the perpetrator, rather than whether the

---

[5] Herein, the parties stipulated that the defendant was previously convicted of the underlying felony of possession with intent to distribute methamphetamine and that ten years had not elapsed between the date of completion of sentence, probation, parole, or suspension of sentence and the date of the instant offenses. See La. R.S. 14:95.1(C).

[6] Although the statute for the completed crime of second degree murder allows for a conviction based on "specific intent to kill or to inflict great bodily harm," La. R.S. 14:30.1, attempted second degree murder, requires specific intent to kill. **State v. Bishop**, 2001-2548 (La. 1/14/03), 835 So.2d 434, 437.

5

crime was committed, the State is required to negate any reasonable probability of misidentification. A positive identification by only one witness is sufficient to support a conviction. **State v. Coleman**, 2017-1045 (La. App. 1st Cir. 4/13/18), 249 So.3d 872, 877-78, writ denied, 2018-0830 (La. 2/18/19), 263 So.3d 1155. In this case, the defendant only challenges the evidence as to the identity of the perpetrator, not the elements of the offenses.

At trial, the State provided overwhelming evidence of the defendant's identity as the perpetrator of the instant offenses, including Allen's positive identification and the defendant's admissions in jail phone calls. On the night of the incident, Allen described the gunman[7] to Deputy Duhig as an approximately six feet tall, 150 to 180 pound, white or Hispanic male with "a bunch of tattoos." Two days later, on August 5th, Allen told Detective Leon that the perpetrator had a child with Curole and showed the detective Facebook images that were on his replacement cell phone, including photographs of the defendant. Detective Josh Borskey of the LPSO then conducted the photographic lineup. Allen selected the defendant from the lineup within twenty seconds of reading the instructions. At trial, Allen testified that he picked the defendant out of the lineup because "[t]hat's who it was." He again identified the defendant in court. Allen denied that the defendant was only shooting in the air, noting that the bullets passed very close to him.

The State further introduced at trial the defendant's jail phone calls with his sister, made shortly after the incident occurred. The defendant implicated himself in the first phone call, in which he told his sister that he would not be convicted of attempted murder, explaining, "because I didn't hit him." The defendant further

---

[7] On cross-examination, Detective Leon stated that Allen described the perpetrator as a white, short, bald-headed male with tattoos. When Allen testified, he clarified what he meant by bald, confirming that he did not mean completely bald, but instead meant the perpetrator had a "low cut." The photograph of the defendant in the lineup is consistent with Allen's description, in that the defendant appeared to be a white male with a low haircut.

relayed that there was no evidence and stated, "They don't know ... it's my word against his."

During the second phone call, the defendant's sister asked him if he was wearing a mask that night. The defendant again implicated himself, confirming that he was not wearing a mask and that his face was visible. The defendant further stated that "Hailey" was not going to show up for court if she really loved him as she claimed and that there was no case without her. He also stated, in reference to his police interview, that the police tried to get him to "tell on myself[,]" but he did not do so, reiterating that they only had Curole's statement.

In a third call, the defendant told his sister to make "her" (presumably Curole) understand that if they were to get married, they could not be forced to testify against each other and to tell her to "stick to the plan." During the third and fourth calls, the defendant also coached his sister regarding his alibi, telling her that she picked him up, that he spent time at her house, and that she brought him home right before midnight. Further, in the fourth call, the defendant's sister stated that she had a friend manipulate the timestamp on a picture of the defendant in her bed, in an attempt to make it appear that the defendant was at her house on the night of the offenses.

During a fifth call, the defendant again instructed his sister to let "Hailey" know that if she did not stick to the plan, she would be going to jail as well. The defendant repeatedly detailed a "story" in which he apparently wanted Curole to admit to inviting "ole dude" (presumably Allen) to her residence, to say that Allen was drunk when he arrived and tried to force himself on her, and that she refused his advances.

Also introduced at trial, the defendant had a two-part recorded jail phone call in April of 2021, with Allen, in which the defendant fully confessed to being the shooter. The defendant told Allen that he was protecting his kids and that

Allen just pulled up at the wrong time and that the "sh*t wasn't for me and you[,]" indicating that he had an issue with another person who was supposed to be in the area that day. The defendant further told Allen that he did not have any "beef" with him, that he was not trying to harm him, and that he was only shooting in the air.

In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. Further, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. **State v. Alexander**, 2014-1619 (La. App. 1st Cir. 9/18/15), 182 So.3d 126, 131, writ denied, 2015-1912 (La. 1/25/16), 185 So.3d 748. Accordingly, on appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. **State v. Lavy**, 2013-1025 (La. App. 1st Cir. 3/11/14), 142 So.3d 1000, 1006, writ denied, 2014-0644 (La. 10/31/14), 152 So.3d 150.

While the defendant argues that he was misidentified, the verdicts rendered in this case indicate that the jury rejected the defendant's hypothesis of innocence. The State presented to the jury Allen's positive identification of the defendant as the perpetrator both at trial and during a pretrial photographic lineup, as well as the defendant's own incriminating statements during recorded jail phone calls. Allen's testimony was consistent with the evidence found by the police, including the ten shell casings and the location of the defendant's vehicle where Allen said he was accosted. In reviewing the evidence presented at trial, we cannot say that the jury's determination was irrational under the facts and circumstances presented. See **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 662.

8

An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. See **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found that the State proved beyond a reasonable doubt all of the elements of armed robbery, convicted felon in possession of a firearm or carrying a concealed weapon, and attempted second degree murder, and the defendant's identity as the perpetrator of those offenses. Thus, we find no merit in assignment of error number one.

## ASSIGNMENT OF ERROR NUMBER TWO

In assignment of error number two, the defendant argues that the six-man photographic lineup used to identify him before the trial was unduly suggestive. He argues the trial court should have ruled the lineup inadmissible.

In **Manson v. Brathwaite**, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), the Supreme Court concluded, "reliability is the linchpin in determining the admissibility of identification testimony[.]" A defendant attempting to suppress an identification must prove the identification was suggestive and that the totality of circumstances presented a likelihood of misidentification. An identification procedure is unduly suggestive if it displays the defendant so that the witness's attention is unduly focused on the defendant. **State v. Carter**, 2014-0742 (La. App. 1st Cir. 3/25/15), 167 So.3d 970, 973. Even if the identification is considered suggestive, that alone does not indicate a violation of the defendant's right to due process. It is the likelihood of misidentification that violates due process, not merely the suggestive identification

procedure.[8] Strict identity of physical characteristics among the persons depicted in a photographic array is not required; however, there must be sufficient resemblance to reasonably test the identification. A trial court's determination of the admissibility of identification evidence is entitled to great weight and will not be disturbed on appeal in the absence of an abuse of discretion. **State v. Johnson**, 2000-0680 (La. App. 1st Cir. 12/22/00), 775 So.2d 670, 677, writ denied, 2002-1368 (La. 5/30/03), 845 So.2d 1066.

Herein, while the defendant did not file a motion to suppress the identification, he did object to the admission of the photographic lineup during the trial. The defendant argued the pretrial photographic lineup was suggestive because the victim described the shooter as a short, bald, white man, and no bald-headed men were included in the lineup, only men who favored the defendant. The trial court overruled the initial objection because there had yet to be testimony that the victim described the shooter as stated by the defense attorney and no pretrial motion to suppress had been filed. The defendant re-urged his objection during Detective Borskey's testimony, and the trial court again overruled the objection, finding that the lineup was properly constructed and was not required to match the preliminary description provided by the victim.

We are not persuaded by the defendant's claim that the depictions in the photographs were inconsistent with the victim's initial description of the perpetrator. The victim testified at trial that when he described the perpetrator as bald, he did not mean a fully bald head and instead meant that the perpetrator had a low haircut. This description is wholly consistent with the photographs in the

---

[8] We note that if the identification procedure is determined to be suggestive, courts look to the "totality of the circumstances" as informed by the five factors set forth by the United States Supreme Court in **Neil v. Biggers**, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). These factors include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Id.*

array, including the photograph of the defendant. A review of the lineup reveals that all of the individuals pictured appear to be white males with the same or similar hair color, the background of each picture looks to be similar, and no individual appears to be wearing an item of clothing that would draw undue attention to that person. Based on the totality of the characteristics of the individuals in the photographic lineup, we agree with the trial court that the lineup was not suggestive.[9] Thus, we find no abuse of discretion in the admission of the identification in this case. Assignment of error number two is without merit.

## PATENT SENTENCING ERROR

Pursuant to Louisiana Code of Criminal Procedure article 920, this court routinely conducts a review for error discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. After a careful review of the record, we have found a sentencing error. La. Code Crim. P. art. 920(2). Louisiana Revised Statute 14:95.1(B) mandates imposition of a fine of not less than $1,000, nor more than $5,000. The defendant's sentence on count three does not include a fine. As the sentence imposed on count three does not comply with Section 14:95.1(B), it is illegally lenient.[10] However, since the error is not inherently prejudicial to the defendant, and neither the State nor the defendant has objected to or raised this sentencing issue on appeal, we decline to remand for the imposition of a fine. See **State v. Price**, 2005-2514 (La. App. 1st Cir. 12/28/06),

---

[9] Moreover, there was no substantial likelihood of misidentification in this case. Allen had a significant opportunity to view the perpetrator, as he closely approached him and then rode in the same vehicle with him until Allen jumped out of the car. Allen had a high degree of attention in this case as, although he was not very familiar with the area, he was able to describe to the police the number of gunshots fired and the location at which they were fired. He identified the defendant quickly, in less than twenty seconds, in the lineup two days after the incident and testified as to the identification with certainty. Considering the five factors of **Neil v. Biggers** and **Manson v. Brathwaite**, we find that Allen's identification of the defendant was reliable.

[10] We also note that when imposing the sentence on count three, the trial court did not state that the sentence would be served without the benefit of parole, as statutorily required. See La. R.S. 14:95.1(B). Nonetheless, as La. R.S. 15:301.1(A) provides, any applicable "without benefits" provision is self-activating. See **State v. Williams**, 2000-1725 (La. 11/28/01), 800 So.2d 790, 799.

11

952 So.2d 112, 124-25 (en banc), <u>writ denied</u>, 2007-0130 (La. 2/22/08), 976 So.2d 1277.

**CONVICTIONS AND SENTENCES AFFIRMED.**