SECURITY CREDIT CORP., INC., v. MENEFEE MOTOR CO., INC.

(June 16, 1930. Opinion and Decree.)

Rosen, Kammer, Wolff & Farrar, of New Orleans, and B. B. Purser, of Amite, attorneys for plaintiff, appellant.

Woodville & Woodville, of New Orleans, attorneys for defendant, appellee.

HIGGINS, J. Menefee Motor Company, Inc., a New Orleans corporation engaged in the sale of automobiles, was unable to secure from the Chevrolet factory sufficient cars for the demands of its customers. It learned that Burnham Motor Company, Inc., of Amite, La., had on hand a larger stock of new cars than it could readily dispose of, and ascertained that the Burnham Company was willing to sell to it on a wholesale basis two new Chevrolet cars.

Thereupon the Menefee Company sent to Amite, obtained the two cars, and paid the Burnham Motor Company, Inc., therefor.

The Security Credit Corporation, Inc., held chattel mortgages on the two cars, and, claiming that it had not been paid by the Burnham Company nor by any one else the amounts due it, brings this suit against the Menefee Company for the amount of the indebtedness. The suit is brought under Act No. 198 of 1918, which is known as the Chattel Mortgage Act, and which, under certain conditions, makes the purchaser of mortgaged property personally liable to the holder of the mortgage.

It developed that certain formalities had been omitted in the execution of the mortgage on one of the cars, and, for this reason, it is conceded that Menefee Company is not liable to plaintiff for the amount of the mortgage debt on that car, but it is insisted that as to the other car all necessary formalities were complied with and that the defendant is therefore liable for the amount due to the mortgage creditor.

Defendant resists payment on two grounds:

First. That, by its action in allowing Burnham Company to sell the automobiles in question without accounting for the proceeds, the Security Credit Corporation, Inc., has estopped itself to claim that the purchaser is indebted to it.

Second. That certain funds of the Burnham Company came into the possession of the Security Company, which funds, if properly imputed by the Security Company, would have extinguished the mortgage debt due on the automobile in question.

The facts with reference to the first defense are that the Burnham Company found itself in straitened circumstances due to its being overstocked with both new and used or secondhand cars and advised the Security Company, through its president, of this condition, and also informed the Security Company that it had sold certain automobiles on which mortgages were extant without accounting to the Security Company, the holders of these mortgages, for the proceeds of the sales.

There is a sharp conflict as to what was then agreed to by the Security Company.

On its behalf, it is now contended that the president agreed that the Burnham Company should continue in business; that the Security Company would continue to make mortgage loans, and that, as cars were sold, the proceeds would be applied to the loans on the respective cars sold; that any surplus earnings would be applied to the old accounts due to the Security Company.

On behalf of the Burnham Company and the Menefee Company, it is contended that the Security Company agreed that it would continue to make loans, that the Burnham Company should continue to operate, and that, as the cars were sold, the proceeds would be devoted to the payment of the old accounts, and then, as these old accounts were gradually extinguished, to the payment of the later loans.

On this question of fact as to what was agreed to, the district judge found with the defendant to the effect that the Security Company had agreed that, though it held mortgages on cars in stock, these cars might be sold and the proceeds, instead of being applied to the payment of the mortgages on the cars sold, might be devoted to the extinguishment of the older debts.

A careful review of the record convinces us that the district judge was not in error in so concluding.

It thus appears that, though the Menefee Company paid in full for the particular car in question, the proceeds thereof along with the other funds were applied by the Burnham Company to the payment of other debts than the mortgage on the particular automobile, and that, though the Security Company may not have had particular knowledge of the transaction, it had given its consent to the course of action which was followed, and thus may be said to have consented that property on which it held a mortgage might be sold and the proceeds devoted to some other purpose than the payment of the mortgage thereon. It appears to us that this action on its part operates as a complete estoppel and prevents recovery by it from the Menefee Company.

In Palmisano vs. Louisiana Motor Co., 166 La. 416, 117 So. 446, 448, the Supreme Court said:

"Of course, the mortgagee by his representations and conduct may estop himself from asserting his mortgage against the property while it is in the hands of a third person."

Though the decision in the Palmisano case, which in some respects is similar to the one we are now considering, was in favor of the holder of the mortgage, the language which we have above quoted shows conclusively that there may be circumstances under which the holder of a mortgage may estop himself to make claim against the purchaser of the mortgaged property, and we think that the reasoning in that decision makes any other view than the one we have expressed untenable.

In that case it was contended that the holder of a chattel mortgage on a new car was estopped to claim payment under the Chattel Mortgage Act from one who purchased the car from the dealer, because the mortgage holder knew that the automobile was to be placed on the dealer's floor for sale, and that, having such knowledge, the holder of the mortgage in effect agreed that it might be sold free of the mortgage, and that he would look to the proceeds of the sale in the hands of the dealer.

The court held that under the circumstances there was no estoppel. But here the facts were substantially different, in that the mortgage creditor agreed that the proceeds of the sale might be applied to some other debt. In other words, the mortgage creditor in effect said: "When you receive the proceeds of the sale you need not pay it to me on the mortgage debt, but I will agree that it may be applied to another debt instead."

In view of the conclusion to which we have come, to the effect that the mortgage creditor is estopped to claim payment from the purchaser of the mortgaged property, it is unnecessary for us to discuss the other point raised by the defendant.

The judgment appealed from is therefore affirmed.