CRAIN, J.
1 aThe defendant, Leo T. Charles, was charged with aggravated flight from an officer, a violation of Louisiana Revised Statute 14:108.1 C (count I), and aggravated obstruction of a highway of commerce, a violation of Louisiana Revised Statute 14:96 A (count II). After pleading not guilty, the defendant was tried before a jury and found guilty as charged on both counts. The trial court denied motions for new trial and post-verdict judgment of acquittal.
The State then filed two habitual offender bills of information, one for each count, alleging the defendant was a fourth or subsequent felony habitual offender. The defendant stipulated to the allegations and was adjudicated a fourth-felony habitual offender on each count in accordance with Louisiana Revised Statute 15:529.1 A(4)(a). He was sentenced on each count to imprisonment at hard labor for thirty-five years, without benefit of probation or suspension of sentence, with' the sentences to run concurrently.
On appeal the defendant asserts that the evidence was insufficient to prove that he was the person who committed the offenses, arguing that the State did not prove that he was the driver of the vehicle involved in a high speed chase. Based upon that same argument, the defendant also contends that the trial court erred in denying his motion for post-verdict judgment of acquittal. Finding no merit in these assignments of error, we affirm the defendant’s convictions, habitual offender adjudication, and sentences.
FACTS
On September 15, 2013, at approximately 6:00 p.m., Detective Dennis Bush of the Slidell Police Department was conducting surveillance of two individuals in a blue Nissan Xterra. Detective Bush recognized the driver of the vehicle as the defendant and the passenger as Prentiss Wallace. The detective observed a white ^female quickly approach the driver’s side of the Xterra, make a quick hand-to-hand exchange, then walk away. Suspecting that the exchange was a drug transaction, Detective Bush contacted another detective, John Cole, and informed him of the situation.
Detective Bush followed the Xterra for about a mile and half when it stopped again. ■ The passenger, Wallace, exited the vehicle and appeared to engage in another hand-to-hand transaction with the driver of *288 a second vehicle, then returned to the passenger seat of the Xterra. At that point, Detective Bush decided to pursue the second vehicle and requested that Detective Cole, who was then near the scene, pursue the Xterra. Detective Bush described the Xterra, and Detective Cole spotted it within seconds of receiving the radio contact from Detective Bush.
The Xterra passed Detective Cole with the driver’s side of the car facing the detective. Detective Cole could see the occupants of the vehicle, and he identified the defendant as the driver. Detective Cole followed the Xterra while other officers positioned their vehicles to assist in the stop. After multiple police vehicles were behind the Xterra, they engaged their sirens and lights and attempted to stop the vehicle; however, it reversed course, drove onto the shoulder of the road, and continued toward a service road. A high-speed chase ensued with multiple police vehicles pursuing and attempting to stop the Xterra.
The Xterra ran a red light and traveled the wrong way down a one-way road before ultimately turning onto the service road. On the service road, the Xterra reached speeds in excess of 70 miles-per-hour. Continuing to travel at a high rate of speed, it approached an access lane to Interstate 10 that had been blocked by an officer’s vehicle, swerved around the vehicle, and accessed the interstate heading towards New Orleans. According to one of the pursuing officers, the Xterra was traveling over one hundred miles-per-hour and was “weaving in and out of the Uvehicles.” The Xterra eventually exited the interstate at a high rate of speed, but the driver lost control of the vehicle while attempting to make a turn. The two occupants exited the vehicle and fled on foot, and the defendant was apprehended shortly thereafter.
SUFFICIENCY OF THE EVIDENCE
The defendant contends that the evidence was insufficient to establish that he was the person who committed the offense because the State did not prove beyond a reasonable doubt that he was the driver of the Xterra. The defendant points out that the officers involved in the chase did not identify which occupant of the vehicle exited the driver’s side at the time they abandoned the vehicle.
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const, amend. XIV; La. Const, art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, this court must consider “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La.Code Crim. Pro. art. 821 B; State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988). The Jackson standard, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. State v. Petitto, 12-1670 (La.App. 1 Cir. 4/26/13), 116 So.3d 761, 766, writ denied, 13-1183 (La.11/22/13), 126 So.3d 477; State v. Patorno, 01-2585 (La.App. 1 Cir. 6/21/02), 822 So.2d 141, 144.
Aggravated flight from an officer, in pertinent part, is “the intentional refusal of a driver to bring a vehicle to a stop ..., under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the | ¿driver or operator has committed an offense.” La. R.S. 14:108.1 C. The crime of aggravated obstruction of a highway of commerce is *289 “the intentional or criminally negligent placing of anything or performance of any act on any ... road [or] highway ... wherein it is foreseeable that human life might be endangered.” La. R.S. 14:96 A.
The defendant does not argue that these offenses were not committed, only that he did not commit them. When the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. Positive identification by only one witness is sufficient to support a conviction. State v. Hughes, 05-0992 (La.11/29/06), 943 So.2d 1047, 1051.
The record reflects that both Detective Bush and Detective Cole positively identified the defendant as the driver of the Xterra. Detective Bush confirmed that the defendant was driving the vehicle as it left the scene of the second suspected drug transaction. Only seconds later, the vehicle passed Detective Cole, and he likewise testified that the defendant was the driver. Detective Cole continued following the vehicle after the chase ensued, and he never saw the defendant switch places with the passenger.
The jury was free to accept or reject, in whole or in part, the testimony of these witnesses; and this court will not reweigh the evidence to overturn the fact finder’s determination of guilt. See State v. Cobb, 13-1593 (La.App. 1 Cir. 3/27/14), 144 So.3d 17, 24. Having reviewed the evidence in its entirety, we cannot say that the determination of the jury was irrational under the facts and circumstances presented to them. See State v. Ordodi, 06-0207 (La.11/29/06), 946 So.2d 654, 662. Any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the evidence proved | f;beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was the perpetrator of the offense. The defendant’s first assignment of error is without merit.
Because the jury’s decision was rationally based on the facts presented to them, we also find that the trial court did not err in denying the defendant’s motion for post-verdict judgment of acquittal, See La.Code Crim. Pro. art. 821 B. The defendant’s second assignment of error is also without merit.
CONVICTIONS, HABITUAL OFFENDER ADJUDICATION, AND SENTENCES AFFIRMED.