CRAIN, J.
| ¡.The defendant, Nicholas Toliver, appeals his conviction for armed robbery with a firearm and his sentence as a'second-felony habitual offender of sixty years, plus an additional five year enhancement, all without the benefit of probation, parole, or suspension of sentence. We affirm.
FACTS
Kenneth Pigott Jr. was walking in a housing complex in Bogalusa, talking on his cell phone, when a truck being driven around the complex attracted his attention. Shortly thereafter, he was approached by two robbers, one who drew a gun and pointed it in Pigott’s face demanding that Pigott “give it up,” and the other, later identified by Pigott as the defendant, who stood behind Pigott, pointed a gun to the back of his head, and said, “[W]e ain’t playing with you. This is a robbery. Give it up. Empty your pockets.” Pigott removed his pants and the robbers took his cell phone and about $60 in cash.
■ Shortly thereafter, Pigott spoke to a 911 operator and described the robbers and the truck. Law enforcement officers were dispatched and stopped the suspect vehicle, which was occupied by the driver, Key-bian Lewis, Ricky Dunn, and the defendant. The three men were searched and taken into custody. The path traveled by the truck prior to the stop was searched and two loaded weapons, a book sack containing a third gun, and Pigott’s cell phone were found. Pigott later identified the defendant and Dunn as the robbers from two photographic lineups.
I ¡DISCUSSION
On appeal, the defendant argues that the evidence was insufficient to support his conviction, that a Batson violation occurred during jury selection, and that his sentence is excessive.

*952
Sufficiency of Evidence

The defendant was convicted of armed robbery with a firearm. He does not challenge the fact that an armed robbery was committed, but argues that he did not commit it. He contends that the evidence was insufficient to support the conviction.
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64A. When the dangerous weapon used to commit the robbery is a firearm, Louisiana Revised Statute Section 14:64.3 mandates that the offender be imprisoned at hard labor for an additional five year period.
A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const, amend. XIV, La. Const, art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, an appellate court must determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt based on the entirety of the evidence, both admissible and inadmissible, viewed in the light most favorable to the prosecution. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Oliphant, 13-2973 (La. 2/21/14), 133 So.3d 1255, 1258; see also La. Code Crim. Pro. art, 821B; State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988). When circumstantial evidence forms the basis of the conviction, the evidence, “assuming every fact to be proved that the evidence tends! 4 to prove ... must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438; Oliphant, 133 So.3d at 1258. The due process standard does not require the reviewing court to determine whether it believes the witnesses or whether it believes the evidence establishes guilt beyond a i-easonable doubt. State v. Mire, 14-2295 (La. 1/27/16), — So.3d -, - (2016 WL 314814). Rather, appellate review is limited to determining whether the facts established by the direct evidence and inferred from the circumstances established by that evidence are sufficient for any rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Alexander, 14-1619 (La.App. 1 Cir. 9/18/15), 182 So.3d 126, 129-30, writ denied, 15-1912 (La. 1/25/16), 185 So.3d 748. The weight to be given evidence is not subject to appellate review and will not be reweighed by an appellate court to overturn a fact finder’s determination of guilt. State v. Cobb, 13-1593 (La.App. 1 Cir. 3/27/14), 144 So.3d 17, 24.
When the defendant’s identity as the perpetrator of a crime is the key issue, the state is required to negate any reasonable probability of misidentification. State v. Neal, 00-0674, (La. 6/29/01), 796 So.2d 649, 658; State v. Carter, 14-0742 (La.App. 1 Cir. 3/25/15), 167 So.3d 970, 976. Positive identification by only one witness is sufficient to support a conviction. Neal, 796 So.2d at 658; Carter, 167 So.3d at 976.
In the 911 call, Pigott described both robbers as being black, one being bald, short, and “kind of chubby,” and the other being tall, with “light” or “bright” skin, and “a little facial ham.” The bald man was wearing a gray sweater-type top, and the other man was wearing a camouflage jacket. Both men had guns, and they took his phone, money, cigarettes, and house keys.
| ¡^Lieutenant Troy Tervalon of the Boga-lusa Police Department testified that he was dispatched to the robbery scene and was advised that the suspects were two black males in a black and gold truck, possibly a 2000 model Ford. Near the robbery scene, Lieutenant Tervalon spotted a *953 dark maroon and gold Ford truck traveling very slowly, which appeared to be occupied by two black males. As the marked police unit and the truck passed each other, the driver of the truck made eye contact with Lieutenant Tervalon and displayed a startled reaction. The truck then sped away at a high rate of speed.
Lieutenant Tervalon turned around and pursued the truck. Upon catching up to the truck, he engaged his emergency lights, and the truck pulled over and stopped. At that time, a third person was also found in the truck. The occupants, Lewis, Dunn, and the defendant, were searched and placed in back of police units.
After seeing the truck, it was out of Lt. Tervalon’s sight for only a short distance. After the stop, Lieutenant Tervalon retraced the path that he had traveled, particularly the area where he lost sight of the truck, and found two weapons lying in the roadway, a book sack with another weapon and plastic zip ties, and two shotgun shells. In the same area, he found Pigott’s cell phone.
Within a few hours of the crime, Pigott gave a videotaped statement and identified the defendant and Dunn from photographic lineups. According to Lieutenant Wendell O’Berry of the Bogalusa Police Department, Pigott “immediately” picked out the defendant and “almost immediately” picked out Dunn from the lineups. Pigott also identified the truck driven by Lewis as the same truck he saw shortly before and after the robbery. The truck was searched and $62 in cash and a camouflage hat matching the description of the hat worn by the defendant were found.
| (At trial, Pigott described how the two robbers approached, him and, with guns held to his face and head, demanded that he turn over any property. He identified Dunn as the bald man who pointed a gun at his face, and the defendant as the lighter-skinned robber who held a gun to the back of his head. He testified that the defendant was wearing a camouflage hat and had a silver and black gun. Pigott was one hundred percent sure that the defendant and Dunn were the two men who robbed him. He attributed his description of the truck as being black and gold, rather than maroon and gold, to the fact that it was dark at the time of the robbery. While he was not sure the truck was black, he was sure it had gold at the bottom and was a Ford F-150.
Pigott signed an affidavit retracting his initial identification of the robbers, but testified that the defendant’s girlfriend paid him $500 to sign it.- In the affidavit, Pigott said he was unsure about his identification of the defendant and Dunn as the robbers, but that the detectives were “sure that these guys were the ones who robbed me.” According to the affidavit, the actual robbers were still “at large,” and Pigott had seen them riding around Bogalusa in a black F-150. Pigott’s affidavit concluded that the defendant, Dunn and Lewis “are not the men who robbed me, I’m sure of it.” Pigott testified, however, that the affidavit was not true, and that he had planned to tear it up and “get a free $500.”
Testimony was presented relative to DNA profiles obtained from the three guns found by Lt. Tervalon. One gun, a .40 caliber handgun, had insufficient DNA to produce a valid profile. The second gun, a sawed-off ■ shotgun, had a DNA mixture from at least three contributors, none of whom were Dunn, Lewis, or the defendant. The DNA profile from the third gun, a nine millimeter handgun, was consistent with being a mixture from at least two individuals, neither of whom were Dunn, Lewis, or the defendant.
|7The defendant argues that the only evidence connecting him to the crime was *954 the testimony of the victim, who he maintains is an “unreliable witness,” and that there is no evidence that he took anything of value from Pigott because the stolen cell phone was not found inside the truck occupied by the defendant, and, with respect to the $62 in cash, “it is no crime to carry cash around in your car.” He points out discrepancies between Pigott’s initial description of the robbers in the 911 call and the defendant’s actual appearance and suggests that the camouflage hat found in the truck “proves nothing other than the popularity of... camo boonie hats.”
The fact finder is free to accept or reject, in whole or in part, the testimony of any witness. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. Carter, 167 So.3d at 978; State v. Underdonk, 11-1598 (La.App. 1 Cir. 3/23/12), 92 So.3d 369, 376, writ denied, 12-0910 (La. 10/8/12), 98 So.3d 848. An appellate court will not reweigh the evidence to overturn a fact finder’s determination of guilt. State v. Cobb, 13-1593 (La.App. 1 Cir. 3/27/14), 144 So.3d 17, 24; State v. Taylor, 97-2261 (La.App. 1 Cir. 9/25/98), 721 So.2d 929, 932. In fact, an appellate court is constitutionally precluded from acting as a “thirteenth juror” in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342 (La. 10/17/00), 772 So.2d 78, 83.
We cannot say the determination of the jury in this case was irrational under the facts and circumstances presented to them. See State v. Ordodi, 06-0207 (La. 11/29/06), 946 So.2d 654, 662; State v. Charles, 14-1411 (La.App. 1 Cir. 4/24/15), 171 So.3d 286, 289. Pigott identified the defendant as the robber who held a gun to the back of his head. While Pigott’s testimony was contradicted by |shis affidavit, he provided a plausible explanation for the affidavit. The testimony of the victim alone is sufficient to prove the elements of the offense. See State v. Orgeron, 512 So.2d 467, 469 (La.App. 1 Cir.1987), writ denied, 519 So.2d 113 (La.1988). A reviewing court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the fact finder. See State v. Calloway, 07-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). The fact that the record contains evidence in conflict with the testimony accepted by a fact finder does not render the evidence accepted by the fact finder insufficient. See State v. Quinn, 479 So.2d 592, 596 (La. App. 1 Cir.1985).
Viewing the evidence in this ease in the light most favorable to the state, the evidence negates any reasonable probability of misidentification and supports the finding of guilt. Any rational fact finder could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of armed robbery with a firearm. This assignment of error is without merit.

Batson Challenge

The defendant contends that the trial court erred in denying his Batson[1] challenge during voir dire to the state’s use of peremptory strikes to remove four prospective African-American jurors.
 In Batson, the Supreme Court adopted a three-step analysis to determine whether the constitutional rights of a defendant or prospective jurors have been infringed upon by impermissible discrimi *955 natory practices. First, the defendant | oinust make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. See Foster v. Chatman, — U.S. -, 136 S.Ct. 1737, 1747, 195 L.Ed.2d 1 (2016). The second step of this process does not demand an explanation that is persuasive, or even plausible; rather, the issue is the facial validity of the prosecutor’s explanation. Purkett v. Elem, 514 U.S. 765, 767-68, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (per curiam). See La. Code Crim. Pro. art. 795C, D, & E.
When the prosecutor offers a race-neutral reason for his use of a peremptory challenge, the preliminary issue of whether the defendant made a prima facie showing is moot. See Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991); State v. Jacobs, 99-0991 (La. 5/15/01), 803. So.2d 933, 941, cert. denied, 534 U.S. 1087, 122 S.Ct. 826, 151 L.Ed.2d 707 (2002). At that point, the trial court may “effectively collapse the first two stages of the Batson procedure, whether or not the defendant established a prima facie case of purposeful discrimination, and may then perform the critical third step of weighing the defendant’s proof and the prosecutor’s race-neutral reasons to determine discriminatory intent.” Jacobs, 803 So.2d at 941. The ultimate burden of persuasion remains on the party raising the challenge to prove purposeful discrimination. State v. Elie, 05-1569 (La. 7/10/06), 936 So.2d 791, 796. A reviewing court owes the trial court’s evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous. Elie, 936 So.2d at 795.
|inThe prosecutor used peremptory challenges to remove the first four prospective African-American jurors, Gwendolyn Harris, Jennifer Robinson, Donald Magee, and Robert Magee.[2] Defense counsel made a Batson objection, and the trial court asked the prosecutor to provide his reasons for striking these prospective jurors. The prosécutor responded: Harris was the mother of a victim in a prior prosecution handled by him; Robinson would require an eyewitness to the crime and would have to be 100% convinced to convict a defendant, and her memory was not good; and, Donald Magee and Ronald Magee both indicated they may require an eyewitness to a crime in order to convict. The trial court found these to be valid, race-neutral reasons for excusing all four jurors and denied the Batson challenge.
On appeal, the defendant focuses on the removal of Donald Magee, maintaining that the prosecutor excused him because of a “gut feeling.” A “gut feeling” alone does not constitute a race-neutral explanation. Alex v. Rayne Concrete Service, 05-1457 (La. 1/26/07), 951 So.2d 138, 153. What is causing the “gut feeling” should be explained for proper evaluation of the proffered reason. Alex, 951 So.2d at 153.
The prosecutor asked if any prospective juror would require eyewitness testimony to convict the defendant. The following exchange with Magee ensued:
*956 [State]: Would you require [an eyewitness], Mr. Magee?
[Magee]: Probably would.
[State]: You probably would. Even if, with all 'the other evidence the State might have, it wouldn’t matter, you would require an eyewitness?
|1t[Magee]: Verbal versus visual. Because, I mean, we could talk all day long about what, you know, saw. But if I haven’t seen it, whether you did [sic],
[State]: That’s.fine. So you would require the State to produce an eyewitness in order to convict? Okay. Thank you.
In follow-up questioning, the trial court asked, “If they prove to you beyond a reasonable doubt the guilt, of the defendant without an eyewitness but from other evidence, you could find the defendant guilty; is that correct?” Magee responded, “Correct.”
Then, following the Batson objection, the prosecutor explained:
Mr. Magee indicated on more than one occasion that he wanted and needed eye witnesses. The State was not firmly convinced that he — that would not be a requirement .... While under questioning by the Court, [Mr. Magee] gave .answers, somewhat different..., [t]he State ... in its experience has come to believe that those initial questions when posed by the State and those initial responses by prospective jurors oftentimes get to the heart of the issue of how prospective jurors actually feel. And, as such, the State does not want any prospective jurors ... that would require in addition to the burden of proof that the State has beyond a reasonable doubt [that] there ... be eye witnesses, regardless of what evidence or lack of evidence the State may have otherwise .... [T]hat is the basis for the State respectfully requesting that ... Mr. Donald Magee ... be excused from jury duty as to this particular case.
The prosecutor said Magee was removed because he did not want a juror who would impose additional requirements on the state’s burden of proof by requiring eyewitness testimony. Although Magee changed his answer when questioned by the trial court, the prosecutor believed, based upon his experience, that a prospective juror’s initial answer is more reliable.
The explanation for challenging Magee was based upon the prosecutor’s experience, not his “gut feeling.” The explanations for the removal of all four challenged jurors reflect race-neutral justifications. The defendant offered no facts or circumstances to support an inference that the prosecutor exercised his peremptory challenges in a discriminatory manner, other than simply referencing] 1⅞ the number of African-Americans removed. When weighed against the prosecutor’s race-neutral reasons, the defendant’s proof was not sufficient to establish a discriminatory intent. See State v. Green, 94-0887 (La. 5/22/95), 655 So.2d 272, 289-90. The voir dire transcript fails to reveal any evidence that the use of peremptory challenges by the' prosecutor was motivated by impermissible considerations. See State v. Handon, 06-0131 (La.App. 1 Cir. 12/28/06), 952 So.2d 58, 59. This assignment of error is without merit.

Habitual Offender Adjudication and Sentence

Lastly, the defendant argues that the state failed to prove the multiple offender bill of information and that the sentence was clearly excessive.
In a habitual offender proceeding, the state has the burden of proving that the defendant was convicted of a prior felony and that the ten-year cleansing pe *957 riod has not elapsed between the defendant’s release from custody on the prior offense and the commission of the new offense. See La. R.S. 15:529.1A-D; State v. Payton, 00-2899 (La. 3/15/02), 810 So.2d 1127, 1130; State ex rel. Wilson v. Maggio, 422 So.2d 1121, 1123 (La.1982); State v. Thomas, 05-2210 (La.App. 1 Cir. 6/9/06), 938 So.2d 168, 176, writ denied, 06-2403 (La. 4/27/07), 955 So.2d 683. Any competent evidence may be used to- satisfy the state’.s burden of proof. See Payton, 810 So.2d at 1130; State v. Moten, 510 So.2d 55, 63 (La.App. 1 Cir.1987), writ denied, 514 So.2d .126 (La.1987). Such evidence may include (1) testimony from witnesses, (2) expert opinion regarding the fingerprints of the defendant when compared with those in the prior record, (3) photographs in the duly'authenticated record, or (4) evidence of identical driver’s license number, sex, race, and date of birth. Pay-ton, 810 So.2d at 1130.
The state introduced a certified copy of records (the pen pack) maintained by the Department of Public Safety and Corrections and presented the testimony of] 13 the records custodian for the Department, Ella Peterson. Peterson confirmed that the pen pack identified the defendant by his date of birth, state identification number, social security number, race, and gender. The pen pack established that the defendant was convicted of two counts of armed robbery on January 27, 2003, in the Twenty-Fourth Judicial District Court under docket number 025167. The bill of information for those convictions identified the defendant by name, date of birth, race, and sex. A minute entry confirmed that the defendant pled guilty to two counts of armed robbery ■ on January 27, 2003, and was sentenced to imprisonment at hard labor for concurrent ten-year terms. The minute entry also contained the defendant’s date of birth, which was the same date of birth included in the bill of information and Master Record for that conviction. The pen pack further established that the defendant remained incarcerated until July 23, 2011.
The name, social security number, state identification number, and date of birth for the defendant in the record of the predicate convictions are the same as those listed in the bill of information for the defendant relative to the present offense. The evidence was sufficient to prove that the defendant in this case was the same person convicted of armed robbery in 2003 and that ten years did not elapse between the date of his release for the prior convictions and the date he committed the subject offense. The trial court correctly found that the state proved the elements necessary for application of the habitual offender statute.
The defendant argues that the sixty-five year sentence imposed by the trial court is excessive. Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence within -statutory limits may violate a defendant’s constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is unconstitutionally excessive if it is grossly disproportionate to the)14 severity of the offense or is nothing more than a purposeless and heedless infliction of pain and suffering. See State v. Hurst, 99-2868 (La.App. 1 Cir. 10/3/00), 797 So.2d 75, 83, writ denied, 00-3053 (La. 10/5/01), 798 So.2d 962. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks one’s sense of justice. State v. Hogan, 480 So.2d 288, 291 (La.1985). The sentence imposed will not be set aside absent a showing of manifest abuse -of the trial court’s wide discretion to *958 sentence within statutory limits. State v. Lobato, 603 So.2d 739, 751 (La.1992).
Louisiana Code of Criminal Procedure article 894.1 sets forth what must be considered by the trial court before imposing sentence. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that the guidelines were adequately considered. State v. Herrin, 562 So.2d 1, 11 (La.App. 1 Cir.), writ denied, 565 So.2d 942 (La.1990). A review for individual excessiveness should consider the circumstances of the crime and the trial court’s stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La.App. 1 Cir.1988). Remand for full compliance with Article 894.1 is unnecessary when a sufficient factual basis for the sentence is shown. See State v. Landos, 419 So.2d 475, 478 (La.1982).
Armed robbery carries a sentence of imprisonment at hard labor for not less than ten years nor more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. See La. R.S. 14:64.B. As a second-felony habitual offender, the defendant’s mandatory sentence was not less than one-half the longest term nor more than twice the longest term prescribed for a first conviction. See La. R.S. 15:529.1A(1). Thus, the defendant’s sentencing exposure was forty-nine and one-half years to one hundred and ninety-eight years, without benefit of parole, probation, or suspension of sentence. See La. R.S. 14:64B; La. UR.S. 15:529.1A(1); State v. Bruins, 407 So.2d 685, 687 (La.1981). He was sentenced to sixty years at hard labor, with an additional five-years imposed for the use of a firearm, all to be served without the benefit of parole, probation, or suspension of sentence. See La. R.S. 14:64.3.
The trial court adequately considered the criteria of Article 894.1 and did not abuse its discretion in imposing the sentence. The trial court noted that it was imposing the sentence in accordance with Article 894.1 and specifically stated that “to impose a lesser sentence for this offense would deprecate the seriousness of the offense.” See La. Code Crim. Pro. art. 894.1A(3). Given the defendant’s multiple convictions for armed robbery, a crime of violence, the sentence was not grossly disproportionate to the severity of the offense and, therefore, was not unconstitutionally excessive. This assignment of error is without merit.
CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCES AFFIRMED.

. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

. The race of the prospective jurors is not entirely clear from the record. However, these four individuals were the focus of the Batson objection by defense counsel, who, when lodging the objection, stated, "Every single African-American has gotten cut.”