CRAIN, J.
|2The defendant, Ricky Dunn, appeals his conviction for armed robbery with a firearm and his sentence as a second-felony habitual offender of sixty years, plus an additional five year enhancement, all without the benefit of probation, parole, or suspension of sentence. We. affirm,
FACTS
On June 24, 2013, Kenneth Pigott Jr. was walking in a housing complex in Boga-lusa, talking on his cell phone, when a truck being driven around the complex attracted his attention. Shortly thereafter, he was approached by two armed men, one of whom, later identified as the defendant, pointed a gun at Pigott’s face and demanded that Pigott “give it up.” The other man, later identified as Nicholas Toliver, stood behind Pigott, pointed a gun at the back of his head, and said, “[W]e ain’t playing with you. This is a robbery. Give it up. Empty your pockets.” Pigott removed his pants and the robbers took his cell phone and about $60 in cash.
Shortly thereafter, Pigott spoke to a 911 operator and described the robbers and the truck. Law enforcement officers were dispatched and stopped the suspect vehicle, which was occupied by the driver, Key-bian Lewis, Nicholas Toliver, and the defendant. The three men were searched and taken into custody. The path traveled by the truck prior to the stop was searched and two loaded weapons, a book sack containing a third gun, and Pigott’s cell phone were found. Pigott later identified the defendant and Toliver as the robbers from two photographic lineups.[1]
^DISCUSSION
On appeal, the defendant argues that the evidence'was insufficient to support his conviction, that his habitual offender adjudication is invalid, and that his sentence is excessive.

Sufficiency of Evidence

The defendant was convicted of armed robbery with a firearm. He does not challenge the fact that an armed robbery was committed, but argues that he did not commit it. He contends that the evidence was insufficient to support the conviction.
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64A. When the dangerous weapon used to commit the robbery is a firearm, Louisiana Revised Statute 14:64.3 mandates that the offender be imprisoned at hard labor for an additional five year period.
A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const, amend. XIV; La. Const, art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, an *958 appellate court must determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt based on the entirety of the evidence, both admissible and inadmissible, viewed in the light most favorable to the prosecution. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Oliphant, 13-2973 (La. 2/21/14), 133 So.3d 1255, 1258; see also La. Code Crim. Pro. art. 821B; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). When circumstantial evidence forms the basis of the conviction, the evidence, “assuming every fact to be proved that the evidence tends |4to prove ... must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438; Oliphant, 133 So.3d at 1258. The due process standard does not require the reviewing court to determine whether it believes the witnesses or whether it believes the evidence establishes guilt beyond a reasonable doubt. State v. Mire, 14-2295, 2016 WL 314814 (La. 1/27/16), — So.3d, -, -. Rather, appellate review is limited to determining whether the facts established by the direct evidence and inferred from the circumstances established by that evidence are sufficient for any rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Alexander, 14-1619 (La.App. 1 Cir. 9/18/15), 182 So.3d 126, 129-30, writ denied, 15-1912 (La. 1/25/16), 185 So.3d 748. The weight to be given to evidence is not subject to appellate review; therefore, evidence will not be reweighed by an appellate court to overturn a fact finder’s determination of guilt. State v. Cobb, 13-1593 (La.App. 1 Cir. 3/27/14), 144 So.3d 17, 24.
When the defendant’s identity as the perpetrator of a crime is the key issue, the state is required to negate any reasonable probability of misidentifieation. State v. Neal, 00-0674 (La. 6/29/01), 796 So.2d 649, 658; State v. Carter, 14-0742 (La.App. 1 Cir. 3/25/15), 167 So.3d 970, 976. Positive identification by only one witness is sufficient to support a conviction. Neal, 796 So.2d at 658; Carter, 167 So.3d at 976.
In the 911 call, Pigott described both robbers as being black, one being bald, short, and “kind of chubby,” and the other being tall, with “light” or “bright” skin, and “a little facial hair.” The bald man was wearing a gray sweater-type top, and the other man was wearing a camouflage jacket. Both men had guns, and they took his phone, money, cigarettes, and house keys.
|^Lieutenant Troy Tervalon of the Boga-lusa Police Department testified that he was dispatched to the robbery scene and was advised that the suspects were two black males in a black and gold truck, possibly a 2000 model Ford. Near the robbery scene, Lieutenant Tervalon spotted a dark maroon and gold Ford truck traveling very slowly, which appeared to be occupied by two black males. As the marked police unit and the truck passed each other, the driver of the truck made eye contact with Lieutenant Tervalon and displayed a startled reaction. The truck then sped away at a high rate of speed.
Lieutenant Tervalon turned around and pursued the truck. Upon catching up to the truck, he engaged his emergency lights, and the truck pulled over and stopped. At that time, a third person was also found in the truck. The occupants, Lewis, Toliver, and the defendant, were searched and placed in back of police units.
After seeing the truck, it was out of Lieutenant Tervalon’s sight for only a short distance. After the stop, Lieutenant Tervalon retraced the path that he had traveled, particularly the area where he lost sight of the truck, and found two loaded guns lying in the roadway, a book *959 sack containing another gun and plastic zip ties, and two shotgun shells. In the same area, he found Pigott’s cell phone.
Within a few hours of the crime, Pigott gave a videotaped statement and identified the defendant and Toliver from photographic lineups. According to Lieutenant Wendell O’Berry of the Bogalusa Police Department, Pigott “almost immediately” picked out the defendant from the lineup. Pigott also identified the truck driven by Lewis as the same truck he saw shortly before and after the robbery. The truck was searched and $62 in cash and a camouflage hat matching the description of the hat worn by Toliver were found.
RAt trial, Pigott described how the two robbers approached him and, with guns held to his face and head, demanded that he turn over any property. He identified the defendant as the bald man who pointed a gun at his face, and Toliver as the lighter-skinned robber who held a gun to the back of his head. He testified that the defendant had a solid black .40 caliber handgun, and Pigott identified one of the recovered weapons, which matched that description, as the gun used by the defendant. Pigott was one hundred percent sure that the defendant and Toliver were the two men who robbed him. He attributed his description of the truck as being black and gold, , rather than maroon and gold, to the fact that it was dark at the time of the robbery. While he was not sure the truck was black, he was sure it had gold at the bottom and was a Ford F-150.
Pigott signed an affidavit retracting his initial identification of the robbers, but testified that Toliver’s girlfriend paid him $500 to sign it. In the affidavit, Pigott said he was unsure about his identification of the defendant and Toliver as the robbers, but that the detectives were “sure that these guys were the ones who robbed me.” According to the affidavit, the actual robbers were still “at large,” and Pigott had seen them riding around Bogalusa in a black F-150. Pigott’s affidavit concluded that the defendant, Toliver, and Lewis “are not the men who robbed me, I’m sure of it.” Pigott testified, however, that the affidavit was not true, and that he had planned to tear it up and “get a free $500.”
Testimony was presented relative to DNA profiles obtained from the three guns found by Lieutenant Tervalon. One gun, a .40 caliber handgun, had insufficient DNA to produce a valid profile. The second gun, a sawed-off shotgun, had a DNA mixture from at least three contributors, none of whom were the defendant, Toliver, or Lewis. The DNA profile from the third gun, a nine 17millimeter handgun, was consistent with being a mixture from at least two individuals, neither of whom were the defendant, Toliver, or Lewis.
The defendant argues that the only evidence connecting him to the crime was the testimony of the victim, who he maintains is “totally and completely unreliable.” According to the defendant, the victim “change[d] his story multiple times [and] even signed an affidavit declaring [the defendant] was absolutely not the man who robbed him.” The defendant also points to discrepancies between Pigott’s initial description of the robbers in the 911 call and the defendant’s actual appearance, and suggests that the discovery of the camouflage hat found in the truck could simply be “a coincidence since camo boonie hats are quite popular in Louisiana, or it could have simply been that Mr. Pigott was trying to set up [the defendant].” The defendant further contends that the DNA analysis presented by the state “conclusively proved” that neither his nor Toliver’s DNA was on the guns recovered by Lieutenant Tervalon.
*960 The fact finder is free to accept or reject, in whole or in part, the testimony of any witness. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. Carter, 167 So.3d at 978; State v. Underdonk, 11-1598 (La.App. 1 Cir. 3/23/12), 92 So.3d 369, 376, writ denied, 12-0910 (La. 10/8/12), 98 So.3d 848. An appellate court will not reweigh the evidence to overturn a fact finder’s determination of guilt. State v. Cobb, 13-1593 (La. App. 1 Cir. 3/27/14), 144 So.3d 17, 24; State v. Taylor, 97-2261 (La.App. 1 Cir. 9/25/98), 721 So.2d 929, 932. In fact, an appellate court is constitutionally precluded from acting as a “thirteenth juror” in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342 (La. 10/17/00), 772 So.2d 78, 83.
|RWe cannot say the determination of the jury in this case was irrational under the facts and circumstances presented to them. See State v. Ordodi, 06-0207 (La. 11/29/06), 946 So.2d 654, 662; State v. Charles, 14-1411 (La.App. 1 Cir. 4/24/15), 171 So.3d 286, 289. Pigott identified the defendant as the bald man who pointed a gun at his race. While Pigott’s testimony was contradicted by his affidavit, he provided a plausible explanation for the affidavit. The testimony of the victim alone is sufficient to prove the elements of the offense. See State v. Orgeron, 512 So.2d 467, 469 (La. App. 1 Cir. 1987), writ denied, 519 So.2d 113 (La. 1988). A reviewing court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the fact finder. See State v. Calloway, 07-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). The fact that the record contains evidence in conflict with the testimony accepted by a fact finder does not render the evidence accepted by the fact finder insufficient. See State v. Quinn, 479 So.2d 592, 596 (La. App. 1 Cir. 1985).
Viewing the evidence in this case in the light most favorable to the state, the evidence negates any reasonable probability of misidentiflcation and supports the finding of guilt. Any rational fact finder could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of armed robbery with a firearm. This assignment of error is without merit.

Habitual Offender Adjudication

The defendant next argues that the evidence presented at the habitual offender adjudication was insufficient to establish that he was a second-felony habitual offender. Specifically, he argues that the state failed to carry its burden of [ 9proving his identity as the same person who committed the predicate offense and failed to negate the cleansing period. He argues that the state’s witness was not an expert in fingerprint analysis and lacked personal knowledge of the exact dates of time served by the defendant.
In a habitual offender proceeding, the state has the burden of proving that the defendant was convicted of a prior felony and that the ten-year cleansing period has not elapsed between the defendant’s release from custody on the prior offense and the commission of the new offense. See La. R.S. 15:529.1A-D; State v. Payton, 00-2899 (La. 3/15/02), 810 So.2d 1127, 1130; State ex rel. Wilson v. Maggio, 422 So.2d 1121, 1123 (La. 1982); State v. Thomas, 05-2210 (La.App. 1 Cir. 6/9/06), 938 So.2d 168, 176, writ denied, 06-2403 (La. 4/27/07), 955 So.2d 683. Any compe *961 tent evidence may be used to satisfy the state’s burden of proof. See Payton, 810 So.2d at 1130; State v. Moten, 510 So.2d 55, 63 (La. App. 1 Cir. 1987), writ denied, 514 So.2d 126 (La. 1987). Such evidence may include (1) testimony from witnesses, (2) expert opinion regarding the fingerprints of the defendant when compared with those in the prior record, (3) photographs in the duly authenticated record, or (4) evidence of identical driver’s license number, sex, race, and date of birth. Payton, 810 So.2d at 1130.
The state introduced a certified copy of records (the pen pack) maintained by the Department of Public Safety and Corrections and presented the testimony of the records custodian for the Department, Ella Peterson. Peterson confirmed that the pen pack identified the defendant by his date of birth, state identification number, social security number, race, and gender. The pen pack established that on July 14, 1994, the defendant was convicted of armed robbery in the Twenty-First Judicial District Court under docket number 67650. The pen pack includes a minute entry from that proceeding that reflects the conviction and the defendant’s | insentence to imprisonment at hard labor for fifteen years for the conviction. Ten years of his sentence were ordered to run concurrently with a sentence he was serving at the time of sentencing and five years of the sentence were ordered to run consecutively to the sentence the defendant was serving at the time of sentencing. The pen pack further established that the defendant remained incarcerated for that conviction until April 9, 2013.
The name, social security number, state identification number, and date of birth for the defendant in the record of the predicate conviction are the same as those listed in the bill of information for the defendant relative to the present offense. The evidence was sufficient to prove that the defendant in this case was the same person convicted of armed robbery in 1994 and that ten years did not elapse between the date of his release for that conviction and the date he committed the subject offense. The trial court correctly found that the state proved the elements necessary for application of the habitual offender statute.

Excessive Sentence

The defendant argues that the sixty-five year sentence imposed by the trial court is excessive. Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence within statutory limits may violate a defendant’s constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La. 1979). A sentence is unconstitutionally excessive if it is grossly disproportionate to the severity of the offense or is nothing more than a purposeless and heedless infliction of pain and suffering. See State v. Hurst, 99-2868 (La.App. 1 Cir. 10/3/00), 797 So.2d 75, 83, writ denied, 00-3053 (La. 10/5/01), 798 So.2d 962. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks one’s sense of justice. State v. Hogan, 480 So. 2d 288, 291 (La. 1985). The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court’s wide discretion to sentence within statutory limits. State v. Lobato, 603 So.2d 739, 751 (La. 1992).
Louisiana Code of Criminal Procedure article 894.1 sets forth what must be considered by the trial court before imposing sentence. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that the guidelines were adequately considered. State v. Herrin, 562 So.2d 1, 11 (La. App. 1 Cir.), unit denied, 565 So.2d 942 (La. *962 1990). A review for individual excessiveness should consider the circumstances of the crime and the trial court’s stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La. App. 1 Cir. 1988). Remand for full compliance with Article 894.1 is unnecessary when a sufficient factual basis for the sentence is shown. See State v. Lanclos, 419 So.2d 475, 478 (La. 1982).
Armed robbery carries a sentence of imprisonment at hard labor for not less than ten years nor more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. See La. R.S. 14:64.B. As a second-felony habitual offender, the defendant’s mandatory sentence was not less than one-half the longest term nor more than twice the longest term prescribed for a first conviction. See La. R.S. 15:529.1A(1). Thus, the defendant’s sentencing exposure was forty-nine and one-half years to one hundred and ninety-eight years, without benefit of parole, probation, or suspension of sentence. See La. R.S. 14:64B; La. R.S. 15:529.1A(1); State v. Bruins, 407 So.2d 685, 687 (La. 1981). He was sentenced to sixty years at hard labor, with an additional five-years imposed for the use of a firearm, all to be served without the benefit of parole, probation, or suspension of sentence. See La. R.S. 14:64.3.
112Prior to imposition of sentence, two witnesses testified on the defendant’s behalf. Mercedes Fast testified that she had known the defendant for three years prior to sentencing. According to Fast, the defendant was an employee of a construction company that repaired her home. Afterward, the defendant continued working for Fast. She testified that the defendant had access to her home, and she trusted him completely. She further testified that the defendant was a “[w]onderful” worker and a “man of great integrity.” Marcus Bennett III testified that the defendant was an employee of his construction company. The defendant had access to tools and materials while working for Bennett, along with a key to the work shop, and nothing was ever taken. Bennett trusted the defendant and would hire him again.
The trial court adequately considered the criteria of Article 894.1 and did not abuse its discretion in imposing the sentence. The trial court noted that it was imposing the sentence in accordance with Article 894.1 and specifically stated that “to impose a lesser sentence for this offense would deprecate the seriousness of the offense.” See La. Code Crim. Pro. art. 894.1A(3). Given the defendant’s multiple convictions for armed robbery, a crime of violence, the sentence was not grossly disproportionate to the severity of the offense and, therefore, was not unconstitutionally excessive. This assignment of error is without merit.
CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCES AFFIRMED.

. Toliver was charged by the same bill of information, tried with the defendant, and found guilty as charged. His convictions and sentences were affirmed in a separate appeal. See State v. Toliver, 15-1959, 2016 WL 5342004 (La. App. 1 Cir. 9/19/16), 205 So.3d 948.